# CHARLESTON.

## HENRY v. OHIO RIVER R. CO.

Submitted January 31, 1895—Decided March 27, 1895.

1. PLEADING—ISSUE—VERIFICATION—REPLICATION.
   There can not be an issue, where there is a plea of new matter, concluding with a verification, without a replication.

2. PLEADING — NEW MATTER—REPLICATION—JUDGMENT OF *Non Pros.*
   Where there is a plea of new matter, concluding with a verification, and the plaintiff fails to reply to it, there ought to be a judgment of *non prosequitur* against him, after a rule to reply, but such rule need not be served.

3. PLEADING—JUDGMENT—NONSUIT
   Such a judgment would not bar a second suit for same cause, it having the effect of a nonsuit.

4. PLEADING
   Where there are two or more pleas, and one is good, though others be bad or found untrue, yet that plea defeats the action.

5. PLEADING—NEW MATTER—REPLICATION—WAIVER OF ERROR.
   A plea introduces new matter, and concludes with a verification, and there is no replication to it or joinder in issue, but the case is tried on its merits upon the evidence, including the evidence touching the defense set up in such plea, and a verdict found responsive to such plea, and no exception made to it on that score in the Circuit Court. This Court will not reverse for this cause, especially at the instance of him who failed to file a replication.

6. OBSTRUCTION OF CULVERT—RECOVERY OF DAMAGES.
   A railroad company makes an embankment in a street on which to lay its track, and so negligently constructs it as to obstruct or close a culvert already there for passage of water, and by reason thereof at times water from rain or snow collects and floods an adjoining lot. Its owner may recover damages.

7. OBSTRUCTION OF CULVERT—STATUTE OF LIMITATIONS.
   The statute of limitations in such case begins to run, not from the date of the building of the embankment, but from the time of the actual injury from the invasion of the lot by the water; the injury being in law recurring, intermittent, and continuous.

8. PRIVATE NUISANCE—PERMANENT INJURY—RECURRING INJURY.
   Permanent injury from private nuisance. When there must be

recovery of past and future damages in one suit, and when repeated suits as injury recurs may be brought, discussed.

9. EVIDENCE—MOTION TO EXCLUDE EVIDENCE.
When the evidence tends in a fairly appreciable degree to sustain the plaintiff's action, the court must not strike out his evidence or direct a verdict for the defendant.

CHARLES E. HOGG for plaintiff in error, cited 16 W. Va. 282; 25 W. Va. 808; 23 W. Va. 457; 151 Mass. 46; 108 N. Y. 407; 105 N. Y. 246; 101 N. Y. 98; 63 Iowa 680; 63 Iowa 302; 71 Mo. 575; 70 Mo. 145; 22 N. J. L. 243; 22 Neb 343; 62 Tex. 593; 19 S. E. Rep. 401; 26 W. Va. 787; 37 W. Va. 108; 4 W. Va. 180; 23 W. Va. 14.

V. B. ARCHER for defendant in error, cited 23 W. Va. 451; 1 Am. R. R. & Corp. Rep. 708 note; 45 Iowa 652; 23 N. H. 83; 107 Mass. 352; 112 Mass. 334; 19 S. E. Rep. 404; 27 W. Va. 308-9; 50 Ill. 241; 3 Suth. on Dam. 403; 18 Minn. 265; 35 Ark. 622; 23 W. Va. 19; 4 Rand. 488; 20 Gratt. 344; 8 W. Va. 201; 9 W. Va. 634.

BRANNON, JUDGE:

Darius Henry brought trespass on the case in the Circuit Court of Mason county against the Ohio River Railroad Company, and by direction of the court the jury found for the defendant, and judgment was rendered for it, and the plaintiff appeals. The suit was for damages to a lot and residence thereon, injured by an overflow of water caused, as alleged, by an embankment raised by the company, on which it laid its track.

A question of law in the case is this: The defendant pleaded not guilty, putting itself on the country, and issue was regularly joined on that plea. The defendant also filed a plea of the statute of limitations, but the plaintiff made no replication to it, and the want of such replication introduces trouble in the case. When this plea came in, being one of confession and avoidance, it demanded a replication either by way of traverse or confession and avoidance; but, standing without replication, judgment should have been rendered upon it for the defendant, as it is a rule in the science of common-law pleading that a pleading introducing new

matter must be met by demurrer or by some response of
fact.   There was an objection to the plea, operating as a de-
murrer, which was overruled, and the plea received; but
there was no replication, and, standing unanswered, it alone
called for judgment for defendant.   This judgment is based
on the ground, under the system of pleading, that the plain-
tiff, by failing to reply to the plea, does not further prosecute
his suit.   A suit may not reach an issue.   It may be cut
short by failure of one of the parties to pursue his litigation.
As to the defendant, if he appears, and fails to demur or
plead to the declaration, or if, after plea, he fails to maintain
the course of pleading required of him by the law of pleading,
judgment called judgment by *nil dicit* (he says nothing) is
given against him.   This would be a judgment *quod recu-
peret*, both final in the cause and conclusive in a second suit.
On the other hand judgment may be given against the plain-
tiff for not declaring, replying, surrejoining, or surrebut-
ting, and this is called judgment by *non pros.* (*non pro-
sequitur*—he does not prosecute).   Steph. Pl. 108, 109; 4 Mi-
nor, Inst. 866; Tidd, Prac. 730.   This judgment of *non pros.*
is a species of nonsuit, and does not bar another suit.   The
matter of the unanswered plea is not taken for true; for, if
it were, the judgment ought to be one of *nil capiat*, both
final in the particular suit and a bar against another.   It is
based, not on the idea that the matter is true for all purpos-
es, but only for failure to prosecute.   It seems to be an un-
reasonable exception to that principle of the law of plead-
ing which holds that whatever is well pleaded, and not de-
nied, is taken to be true.   1 Saund. Pl. & Ev. 39.   A much
more logical principle would be to treat it as confessed, and
render judgment final and conclusive, like the proceeding in
chancery, where an answer is filed responsive to the bill al-
leging new matter, which, in absence of replication, is taken
to be true, and final decree rendered upon it.   *Cleggett* v.
*Kittle*, 6 W. Va. 542.

At first thought, such judgment might be regarded as both
final in the cause and conclusive upon the matter in contro-
versy, as there is the declaration stating the cause of ac-
tion, and the plea stating facts constituting a bar on its

merits, and it remains unanswered, and we might expect a judgment of the law, which would ever be an end of controversy upon those facts; but such a judgment is not regarded as one on the merits, but only as a nonsuit, and, while final in the particular case, not conclusive upon the matter of action. It is treated as a nonsuit by 3 Bl. Comm. 296; by 4 Minor, Inst. 867; 2 Black, Judgm. § 702; 1 Freem. Judgm. § 261. Judge Summers regarded it as a nonsuit in *Pinner* v. *Edwards*, 6 Rand. 675. All authorities hold that a nonsuit does not bar a second suit for the same cause. The authorities just given say that a judgment on *non pros.* will not defeat a second suit. The question was fully discussed in *Howes* v. *Austin.* 35 Ill. 396, in a case where, just as in this case, the pleas were general issue, and a special plea in bar, and, the plaintiff failing to reply to the special plea in answer to a rule to reply, judgment was entered that the defendant go hence, not that the plaintiff take nothing by his suit. It was held to be a judgment of nonsuit, and not a bar to second suit. It was not necessary, before rendering such judgment of *non pros.*, to wait for trial on the plea of not guilty; for there was the plea of the statute, and no replication, and it alone called for judgment ending the suit. If there be two or more pleas, one a good bar to the whole declaration, though others be bad, or found against the defendant, he is entitled to judgment on that plea. He may now plead several defenses, and, if one only be good, that is enough to defeat the action. 2 Tuck. Bl. Comm. 260; Steph. Pl. 273; *Clearwater* v. *Meredith*, 1 Wall. 25. If the plea were bad, such judgment would be improper; but this was the ordinary plea that the action accrued more than five years before suit, and was on its face good and properly admitted. But the trial went on, notwithstanding there was no replication to the plea of the statute, court and parties treating the case as though there had been an issue on it, probably by mere inadvertence. After the introduction of the plaintiff's evidence, the defendant, without giving any evidence, moved the court to direct the jury to find a verdict for the defendant on the plea and issue joined on the statute of limitations, and the court instructed the jury to find such verdict, and

it was found. The plaintiff in error says this verdict should be set aside, because there was no replication, and therefore no issue on the plea of the statute of limitations. I thought at first that we might be able to say that there was an issue by the language of an order which says that the defendant moved the court to direct the jury to find for it "on the plea and issue joined on the statute of limitations," and thus treat the case as it was acted upon in the Circuit Court—that is, upon issue properly joined; but I find no formal replication, or the informal one often resorted to, "And the plaintiff replies generally to said plea," which is simply entered in the order book, and, though informal, seems good (*Railroad Co.* v. *Bitner*, 15 W. Va. 459); and there is no reference to the joining of issue, save that incidental reference just quoted, and we can not, by mere implication from it, create what should be directly and affirmatively stated, the filing of a replication and joinder of issue on it. And, at best, that language recognizes only an issue, not a replication; and replication is one thing, joinder of issue another, and from the mere recital in the record of the existence of an issue, we can not imply that without which no issue could exist, that is, a rejoinder. "Where a plea concludes with a verification, there can not be a joinder of issue without a replication." *Lockridge* v. *Carlisle*, 6 Rand. 20; 1 Bart. Law Prac. 478, 480. In that case a statement on the record—stronger than in this case—that issue was joined on the special plea was held not to be sufficient. If the mere mention of an issue in the entry of said motion would be sufficient to show a replication, the statement in the record that the jury "was sworn to try the issue joined" would show the presence of a plea in such cases as *State* v. *Douglass*, 20 W. Va. 770, and *Ruffner* v. *Hill*, 21 W. Va. 152; but they hold otherwise. There is no statement in this record either of a replication or that issue was joined on the plea. Some cases hold that even where there is a statement that issue is joined, though there is none that the plea or other pleading was filed, there is still no issue and the defect is fatal. *Wilkinson* v. *Bennett*, 3 Munf. 314; *Stevens* v. *Thornton's Adm'r*, 1 Wash. (Va.) 194; *Lockridge* v. *Carlisle*, 6 Rand. 20. Others hold, not that

there is an issue in such case, but that it is merely misjoinder, and cured by statute of jeofails after verdict. *Moore* v. *Mauro,* 4 Rand. 488; *Huffman* v. *Alderson,* 9 W. Va. 616; *Railroad Co.* v. *Daniel,* 20 Gratt. 344. There is conflict in these cases. See 1 Bart. Law Prac. 482.

So, tested by technical principles of common-law pleading, we shall say there was no issue on this plea. What then? What the result? There is considerable difficulty in reaching this result. It has been long and often held by our courts that when a judgment rests on a verdict of a jury sworn to try an issue joined in a case, criminal or civil, when no issue had in fact been joined, it would be ground for its reversal. *State* v. *Douglass,* 20 W. Va. 770; *Ruffner* v. *Hill,* 21 W. Va. 152. So often and indiscriminately has it been held that the rule seems almost inexorable; but the courts have in some instances felt its inconvenience, in cases where there has been a fair trial on the merits, and no objection was made on that score in the trial court. In this case there was a plea of not guilty, and issue on it, and this plea of the statute, and all the evidence bearing on both, was heard, and a verdict responsive to issues under both pleas, had there been issues, was found; all parties treating the case as tried under both pleas. In *Huffman* v. *Alderson,* 9 W. Va. 616, it was held that, though some of the pleadings conclude with a verification, and no issues are formally joined thereon, though joined on others, yet if the record states that the jury was sworn to try the issues, and the instructions show that the case was fully tried on the merits, including the defenses set up by the pleadings, on which no issues were joined, and the verdict responds, not only to the issues joined, but to the defenses on which issues were not joined, such verdict cures such defects under the statute of jeofails, it being a case of misjoinder of issue. In *Griffe* v. *McCoy,* 8 W. Va. 201, Judge Haymond referred, with some expression of disapprobation, to the rigor of former decisions upon this subject, and thought they might need revision. He says he would follow the principles in *Southside R. Co.* v. *Daniel,* 20 Gratt. 344. That was an action for damage to land caused by overflow from an embankment made

for the railroad, as is this case, and, as in this case, the defendant pleaded not guilty, on which issue was joined, and a special plea, and there was a special replication, concluding to the country, but no rejoinder, nor any joinder of issue on it; but the parties went to trial, and the subject of the special plea and replication were contested before the jury, and there was a verdict for the plaintiff. The record, as here, showed that the jury was sworn to try the issue, not issues. It was held that, as there was no objection to the want of joinder in the court below, it could not avail in the appellate court. We know in the case in hand that the whole matter on this plea of the statute was contested, because the record states that the defense moved for a verdict "on the plea and issue joined on the statute of limitations," and the evidence covering that defense was before the jury. The case of *Moore* v. *Mauro*, 4 Rand. 438, supports this view. The case of *Curry* v. *Mannington*, 23 W. Va. 14, might seem at first view to forbid the application of this doctrine to this case. There the defendant pleaded not guilty and the statute of limitations, and there was no replication or joinder of issue on either plea, and the verdict for plaintiff was set aside at defendant's instance. There the defendant was not chargeable with the omission to reply to the pleas, and he could with consistency avail himself of the defect; whereas, in this case, it was the plaintiff's duty to reply to the plea, and he is the party asking to have the verdict set aside, and take advantage of his own default in pleading, as the defendant could not rejoin till the plaintiff replied. This is a reason, in addition to others stated above, for not allowing the plaintiff for this cause to set aside the verdict. So it seems to me that the plaintiff can not, under the circumstances set aside the verdict. It may be better for him that said that as there is no replication, he could not have consaid that, as there is no replication, he culd not have considered the evidence as regards the statute of limitation; but, as we hold to the same effect as if there had been such replication, we can consider the evidence as bearing on the issue raised by the plea of the statute.

Therefore I will now consider whether, under the evi-

dence, the action was barred, so as to see whether the action of the court in directing the jury to find for the defendant, on the theory that the action was barred, is correct or erroneous. The ground of action averred in the declaration is that the plaintiff was owner of a lot of land in the town of Clifton, on which was his dwelling, bounding a certain street, and the railroad company built its railroad across the street, and in so doing raised an embankment across the street on which its track was laid, and maintains it to the great detriment of the said property; that running along by the side of the street, and within its bounds, is a drain or culvert used to carry off water accumulating on the street from rain and snow; that the embankment was so carelessly, negligently, and unskilfully made that the water can not pass off the street, as it had always done before the embankment was made, but, by reason of such improper construction of the embankment, gathers on the street in great quantity, and flows into the plaintiff's lot, and into the cellar under his dwelling, and remains in the cellar for weeks and months, and deprives the plaintiff of the use of the cellar, and renders the dwelling damp and unhealthy, and damages the use of the property as a home, and renders the property less valuable than it would be without the embankment. Though general detriment to the plaintiff's property is alleged, the specification is the overflow of water from rains and snows, transient and recurrent causes. When does the statute of limitations begin to run in such case? Shall we count from the making of the embankment, or from each overflow as it recurs? Here the lines of thought and demarcation are close, the application of principles of law in particular instances difficult, and the authorities differing. The statute begins to run from the time the cause of action accrues. But when did that accrue in this case? The act of the defendant was the building of the embankment, but that, in itself, alone did not harm the plaintiff. He could not sue for that, as no harm as yet was done his property. Later on damage is done him by overflow. The water is the immediate agent doing the injury. We seek the cause of its presence, and find the em-

bankment is the cause of its presence. The overflow is consequential from the embankment. Never till this overflow did the plaintiff have right to sue. Had he sued at once on the making of the road, what would have been the basis of damage? The building of the embankment was the remote or primal cause—the *causa causans*—in the line or process of the production of the injury; but the overflow consequent upon it is the direct cause of harm—the gravamen of the action. If one put a log in the road, no individual can sue for that only; but if he fall over it he may sue, and the statute runs from the fall. There must be a wrong and some loss to warrant an action. The action accrues when the damage is sustained by the plaintiff, not when the causes are first set in motion ultimately producing the injury as a consequence. Wood, Nuis. § 865; Lewis, Em. Dom. § 666; Wood, Lim. § 180; 16 Am. & Eng. Enc. Law, 667; Ang. Lim. § 300. As stated in the elaborate and valuable notes to case of *Wells* v. *New Haven & Northampton Co.*, 151 Mass. 46 (23 N. E. Rep. 724 in 1 Am. Ry. & Corp. Rep. 708) the fundamental question is one of damages, and may be put thus: When, in a suit for damages resulting from a wrongful act, must there be a recovery in one suit for all damages past and prospective, and when must the recovery be limited to damages prior to the suit, leaving future damages for future suits, as future damages may occur? The question usually comes up in one of three forms: In considering the measure of damages, in considering whether the action is barred by limitation, and in considering whether it is barred by a former recovery. Now, when the case is one of such nature as to enable the party in one suit to recover future as well as past damages, there the statute runs from the original beginning of the nuisance; but, when there can only be recovery for past damages, the statute does not run from the institution of the nuisance, but from the injury, when it occurs or recurs as its consequence. Where the nuisance is permanent, so that it will continue unless labor be applied to change it, and it necessarily injures the plaintiff, there must be a recovery in one suit for all damage, and none other can be afterwards brought, and recovery of damages will give the defendant

right to continue his nuisance without further claim from the individual; but, where it is otherwise, there can not be recovery for future damages, but only from time to time as they occur, and one recovery does not justify the perpetuation of the nuisance, but there may be recovery after recovery, as long as continued. This doctrine is well settled and is recognized by this Court in *Hargreaves* v. *Kimberly*, 26 W. Va. 787; *Watts* v. *Railroad Co.*, 39 W. Va. 196 (19 S. E. Rep. 521); *Rogers* v. *Driving Co.*, 39 W. Va. 272 (19 S. E. Rep. 401); See Wood Nuis. § 865; Wood Lim. § 180. See exhaustive note to *Hargreaves* v. *Kimberly*, 53 Am. Rep. 123, being the opinion in *Uline* v. *Railroad Co.*, 101 N. Y. 98 (4 N. E. Rep. 536). In *Plate* v. *Railroad Co.*, 37 N. Y. 473, an action for maintaining railroad track and ditches, causing water to flow on land, just like this case, it was held that a former recovery was no bar to a second action, and that only past, not prospective damages could be recovered in such case. The New York cases collected in the opinion of *Uline* v. *Railroad Co.*, just mentioned, strongly support our view. In our case of *Hargreaves* v. *Kimberly* it is stated as a criterion whether one recovery would give a right to continue the cause. The trouble is to see what cases they are; in what cases a recovery for a trespass would confer a right, pass title to occupy land, or permanently injure it. Can land be thus acquired? I however, make no point on this, but the suggestion or doubt only strengthens the holding on the real point in this case. Can it be possible that an amount of damages could in this suit be recovered to cover all damages for all time to come from repeated overflows, when the company might, by small work, entirely remedy the evil? Could the jury or we act on any assumption that it would not do so, rather than suffer repeated actions? I think not. It seems settled that if a mill-dam cause an overflow upon land of a riparian owner, the cause of action is continuous, and he can sue as long as the overflow continues, until the right to overflow is vested and justified by prescription. *Staple* v. *Spring*, 10 Mass. 72; *Field* v. *Brown*, 24 Gratt. 74.

I would liken this case to the case of a mill-dam, save that, if any different, this is more plainly the case of continuous

injury, actionable upon each recurring overflow. I think the general rule as to nuisances applies to this case, it being one of recurring, intermittent, or occasional injury. That rule is that every continuance from day to day is a new nuisance, for which a fresh action lies, so that, though action for the original nuisance be barred, damages are recoverable for the statutory period for injuries within it, provided enough time has not elapsed to give the person maintaining the nuisance a right to do so by adversary use. 4 Minor, Inst. 509 (472) 546 (507); Wood, Nuis. § 865; Wood, Lim. § 180. Now, this embankment itself has the element of permanency, it is true, and that far complies with the rule warranting recovery of past and future damages, in one action, but it does not necessarily *per se* injure the plaintiff's property in respect to the mode of injury charged; that is, overflow. That happens only when rains or snows come. If the suit were for cutting off access by reason of the embankment only, it would be different. *Smith* v. *Railroad Co.,* 23 W. Va. 451. To warrant final recovery for past and future damage, there must be a structure permanent in nature, and damage directly and at once necessarily arising from it. In *Miller* v. *Railway Co.,* 63 Iowa, 680 (16 N. W. Rep. 567) it was held that against a cause of action for damages from water flowing through a ditch wrongfully dug, the statute runs, not from the date of digging the ditch, but from damage caused by it. In *Wells* v. *New Haven & Northampton Co., supra,* it was held that where a railroad company collected the water of eight natural streams, and discharged it with considerable surface water upon land where much of it had not been accustomed to flow, that the nuisance was continuous, and action was not barred in six years from the erection, and one subsequently purchasing the land could sue for damages. So one purchasing after the improvement recovered in *Canal Co.* v. *Lee,* 22 N. J. Law, 243, which he could not do if the cause of action accrued from the date of the work. Here the cause of action is not from the work, as it would be if the action were for the mere construction of the embankment on plaintiff's land without authority, or for cutting off access to his lot. The construction of the work was lawful and au-

thorized, but it is the manner of construction, the negligent manner of construction, entailing injury later as a consequence by producing overflow, that is alleged as the wrong. The plea was properly received, but the evidence showed overflow within five years, and hence the plea could not justify judgment for defendant, as, although the embankment was more than five years old, the case was not such as would have warranted recovery of future damages had an action been brought within five years from the erection of the embankment, and, the damages being continuous, the statute ran, not from its erection, but from the overflow. So we hold that the court erred in directing the jury to find for the railroad company on the idea that the action was barred by time. That, though a work of improvement, like a railroad, is lawful and under authority, yet, if damage result to an individual by overflow of water by reason of negligent construction, he can recover, is well settled. *Gillison* v. *City of Charleston*, 16 W. Va. 282; *Knight* v. *Brown*, 25 W. Va. 808; *Taylor* v. *Railroad Co.*, 33 W. Va. 39 (10 S. E. Rep. 29). It is only an application of the maxim: "So use your own property or right that you do not injure another." I understand, indeed, that in this state, negligence is not an essential to recovery, but only damage. *Gillison* v. *City of Charleston*, 16 W .Va. 282; *Johnson* v. *Parkersburg*, *Id.* 402. But, where the landowner has been compensated, negligent construction is required to maintain action.

Another error is in the record; that is, under the plea of not guilty. I treat the action of the court in directing the jury to find a verdict for the defendant, in the light of a motion to exclude the plaintiff's evidence because insufficient to warrant a verdict for the plaintiff. In this view we need not, ought not, and do not pass on the weight or effect of the evidence to warrant a verdict for the plaintiff, but leave that for what that evidence has not as yet received—the consideration of the jury in another trial. All we have to say, under this plea of not guilty, is whether the evidence in any appreciable degree tends to support the action, and, if it does, that requires it to go before the jury for its verdict on it, and shows that the action of the court in directing a verdict was

erroneous. *Powell* v. *Love,* 36 W. Va. 96 (14 S. E. Rep. 405). See note Anth. Steph. Pl. p. 336. The court gave as a reason for its action its opinion that the action was barred by statute. Had such been the case, then one defense would have been enough, and there would be no error to reverse under the plea of not guilty in directing a verdict. It may be suggested that as the plea of the statute was not replied to, and as judgment should have been given on it for the defense before the trial, there is no error in giving judgment later, though after trial; that judgment is only what the defendant was entitled to on that plea, and that which ought earlier to have been given, has been given at last; that the record merely states a wrong reason for judgment, but if the judgment was properly given, on any ground, though not justified by the ground stated, the reason given, does not affect the judgment. *Shrewsberry* v. *Miller,* 10 W. Va. 115. But the answer is that the judgment rendered is upon verdict on both issues, and is one of *nil capiat,* forever barring the plaintiff from recovery in another suit for damage up to its institution, though it would not for after damages; whereas, the judgment called for by the failure to file a replication would be one of *non prosequitur,* as stated above, which would not preclude another action, for reasons fully given above.

For these reasons we reverse the judgment, set aside the verdict, and remand the cause, with direction to award a rule upon the plaintiff to file a replication to said special plea, and, if he does so, there shall be a new trial, and, if he does not, then for judgment of *non pros.* against the plaintiff. Reversed and remanded.