# CHARLESTON.

## McHenry v. City of Parkersburg.

Submitted September 11, 1908.  Decided December 21, 1909.

1.  Municipal Corporations—*Street Improvements—Abutting Property—Surface Water—Damages.*

    Injury to real property, caused by a city, in the collection of surface water and casting the same upon the premises, by means of the grading and sewering of its streets, so as to subject the same to occasional and intermittent submergence, gives right to recovery of temporary, not permanent, damages. (p. 535).

2.  Same—*New Trial—Injuries to Property—Temporary Damage—Difference in Value.*

    In the trial of an action for such damages, evidence of the difference between the value of the property before it was subjected to the injury and its value thereafter, is inadmissible, and, if admitted without objection, a verdict, based upon it, will be set aside upon motion. (p. 535).

3.  Same—*Injuries to Realty—Temporary Damages—Elements.*

    A verdict in such an action, predicated partially upon evidence going beyond the true measure of damages and tending to prove the cost of altering the condition of the property so as to abate the cause of injury or render the property immune from its operation, in addition to the true elements of damages, the cost of repairing the injury to the property, reimbursement for expenses, directly occasioned by the flooding of the property, and compensation for loss of use of the property and rentals, destruction of, and damages to, personal property, and the like, should be set aside on motion, although the evidence was admitted without objection. (p. 536).

Error to Circuit Court, Wood County.

Action by Julia McHenry against the City of Parkersburg. Judgment for plaintiff, and defendant brings error.

*Reversed and Remanded.*

*W. S. Allen* and *W. B. Pedigo,* for plaintiff in error.

*McCluer & McCluer,* for defendant in error.

Poffenbarger, Judge:

Julia McHenry recovered a judgment for $750.00 against the City of Parkersburg, as damages for collecting surface water,

by means of its sewer system and casting the same, in a body, upon her lot, to the injury of her grounds and dwelling house. Assigning several errors, the city complains of the judgment.

Plaintiff's lot is in low ground and a small drain, generally dry except in wet weather, has always run through it. Street improvement and the construction of sewers in the neighborhood of the lot have facilitated the flow of water and added to the volume which passes through the lot. This drain passed right under the plaintiff's house. The increased flow of water has somewhat enlarged it, but it is still a mere gutter. Owing to the general improvement in the neighborhood, the water stands on the lot after a heavy rain and in protracted spells of wet weather. On one or two occasions, it has been in the house, once attaining a depth of twelve inches on the floor. The shrubbery and flowers have been injured and destroyed, plaintiff has been prevented from using the lot for gardening purposes, some of the pillars of the house have settled, throwing it out of shape and cracking the plastering, the floors have been injured and some little damage may have been done to carpets and furniture. Notwithstanding all this, plaintiff occupied the house as her residence until the 10th day of March, 1907. Many witnesses, permitted to testify, without objection, to the value of the property five years before the bringing of this suit, said it was worth from $1,500.00 to $2,500.00, and then, in response to questions, as to the value at the time the suit was instituted, said it was worthless. Others placing a high value on it prior to the injury, said it had been greatly damaged. All this testimony embodies the theory of permanent injury. It assumes the cause of injury to be irremovable and unabatable. Practically no evidence of any other kind was adduced. Mrs. McHenry's husband, after stating the conditions, said it would require $900.00 to restore the property to the condition in which it was prior to the placing of the sewers by the city. Possibly one other witness gave substantially the same testimony. This is all the evidence in the case pertaining to the elements or quantum of damages. It all went in without objection. Its admissibility was, therefore, impliedly assented to, but a motion to set aside the verdict challenges its sufficiency to sustain the verdict.

The case calls for what are designated, in the decisions, temporary damages. Injury to real estate differs in nature and degree. Under some circumstances, recovery may be had from time to time as damages accrue. Under others, but one recovery can be had and that includes all the injury the property has sustained in the past, and will sustain in the future. Damages, recovered in the latter class of cases, are called permanent damages, and damages recovered in the former, temporary damages. Permanent damages are given on the theory that the cause of injury is fixed and indeterminable and the property must always remain subject to it. The injured party is limited to the recovery of temporary damages, when the injury is intermittent and occasional, or the cause thereof remediable, removable or abatable. It assumes that the plaintiff himself may be able to remedy the cause of injury or relieve his property from its ill effects, or that the defendant will be induced or compelled, by the infliction of repeated judgments for damages, to remove it. *Henry* v. *Railroad Co.,* 40 W. Va. 234; *Godbey* v. *City of Bluefield,* 61 W. Va. 604; Suth. on Dam., sections 114, 115, 116. Our two decisions, just cited, put cases of this kind in the class, limiting the recovery to temporary damages, and, in this we are sustained by the text cited and the decisions upon which it is predicated. The correctness of this position is not questioned here and was not in the court below. The contention is that the evidence in the case justifies a verdict for temporary damages. This we do not deny. It is also said to be sufficient to sustain a recovery for $750.00. This position is, in our opinion, untenable. In other words, we think the damages awarded are larger than the evidence will sustain.

The evidence of prior and subsequent value necessarily looks to the future, as well as to the present and the past. In effect, it says prior to the injury the property would have sold in the market for so much money, and, afterwards, it would not have sold for anything or would have sold for very little. The difference in market value is the measure of damages in cases of permanent injury, or cases calling for permanent damages. The contrary of this view of the evidence is strenuously insisted upon, but we are unable to see how its effect can be confined to the actual damage done up to the time of the institu-

tion of the action. It affords no basis for a finding otherwise than upon the theory of a depreciation in market value and the continuance of the cause of injury. It is true, nothing is said about the future operation of this cause, but it is clearly and manifestly assumed. The evidence proves past value and value under present conditions. What is the present condition? The property is subjected to this intermittent or recurrent injury from the flowing of water. The purchaser, on a sale, would have to take it in that condition. This evidence does not assume or intimate the discontinuance of this injurious cause. Nothing suggests to the jury that it ever can be, or will be, removed. A recovery of the difference in market value now would not, according to the argument here submitted, prevent recovery of the difference in market value in as many subsequent suits as the plaintiff may see fit to institute, and, in each of these subsequent suits, a different set of witnesses may testify. While those who are introduced in this case said the property was worthless at the time of the commencement of this action, those who may be introduced in the next action may say it was only slightly injured and was worth, in their opinion, $1,500.00 or $2,000.00, and has since become worthless. This would give room for another recovery of difference in market value and the operation could be repeated *ad libitum*. The judgments in former actions would only prove the amount recovered, the cause of action, and the dates to which the estimates of damages extended. The record would not disclose the evidence. It is never reduced to writing and made part of the record except for appellate purposes, nor are the instructions. None would prove the value of the property at the date of the commencement of the action, as a basis of, or starting point for, the estimate in the next succeeding one. That would be an open question in the second action, and, if the evidence therein should fix it even higher than the highest proved in any former trial, and then a total, or practically total, loss, the court would have no power of control over it, and recovery on that basis would follow. This would amount to a travesty upon justice, enabling the owner to recover over and over, as upon repeated sales of the property, and still remain its owner. A verdict

in a case of this class cannot stand upon such evidence.    Is there any other in the case upon which it can stand?

Plaintiff's husband and possibly one other witness said it would take $900.00 to restore the property to its former condition, but did not indicate what this cost would include, otherwise than by the previous detailing of the extent and character of the injury and the cause thereof.    Did this include the cost of putting a sewer through the lot to carry the water away, or of filling the lot so as to divert the water from it, in addition to the cost of repairing the building and loss of, and injury to, carpets and furniture, and deprivation of use and rents? No juror could say nor can we.    These witnesses did not say what it would require to repair the house, fill the gutter and compensate for loss of rents, use and articles destroyed.    Their testimony goes far beyond that, affording ground for the inclusion of the cost of raising the house and filling the lot, so as to put them above the reach of the water.    This would be an improvement to the property and an abatement of the injury, not a mere reparation of the damages, such as the repair of the house and filling the gutter.    It has never been done.    No money has been so expended and may never be.    If recovered in this action and not applied, it could be recovered over again in the next action and still not applied and so on, as long as plaintiff might care to repeat the operation, for the record of this action would not show it in any conclusive form.    We repeat this would be cost of improvement as well as cost of reparation of injury, and, if such outlay had been actually made, the cost thereof in excess of what was required for reparation could not be recovered.    No person can directly or indirectly charge a municipal corporation with the cost of benefits to his own property except in so far as they work reparation of injury done to it by the corporation.    *Godbey* v. *Bluefield,* cited.    Obviously, this evidence goes beyond the cost of repairs and other recoverable damages, but, if the construction thereof be an equally balanced question, the beam is tipped by the great mass of evidence of permanent damages, accompanying it.

We admit the admissibility of opinion evidence, but insist upon its weakness and upon the necessity of the statement of data to enable the jury and court to test its admissibility, weight

and value; and we regard the testimony here discussed as constituting a mere scintilla of evidence, insufficient to sustain a verdict for so large an amount in view of the facts disclosed by the evidence in general. It should not have been admitted in the form in which it was offered.

We are not overlooking the caution of the court in respect to the time limitation in finding and estimating the damages. This does not cure the error in allowing a verdict to stand on evidence of the cost of unmade improvements and future injury.

Finding the damages clearly excessive, we reverse the judgment, set aside the verdict and remand the case for a new trial.

*Reversed and Remanded.*

Robinson, Judge, *(dissenting):*

The overthrow of the verdict and judgment in this case meets with my unqualified, but respectful, dissent. Deep convictions, arising from a most thorough examination of the record, impel me to offer here my views upon every feature of the case that has been presented by assignments of error in this Court.

That there is liability for damages caused by a municipal corporation in collecting surface water and casting it in a mass or body upon one's property is settled law in this State. *McCray v. Fairmont,* 46 W. Va. 442; *Clay v. St. Albans,* 43 W. Va. 339; *Jordon v. Benwood,* 42 W. Va. 312; *Gillison v. Charleston,* 16 W. Va. 282.

Five propositions are advanced by the appellant to support a reversal. We shall state and briefly consider each of them.

First: That there is a variance between the allegations of the declaration and the proof as to the location of the sewers which are alleged to have caused the damage.

This point is extremely technical. The declaration is broad enough to permit proof of damage caused by collected surface. waters from any sewers put in by the city in the vicinity of plaintiff's property. Under this head it is insisted that the evidence does not show that all the sewers described by witnesses as the ones which collected the surface water were constructed within five years prior to the institution of the suit. The declaration does not allege, nor need it do so, that the sewers were constructed within five years prior to the suit. It alleges

that surface waters were collected by sewers in the vicinity of the property and cast in a body upon it to its damage, within five years. The statute of limitations, which has been pleaded in this case, begins to run from the occurrence of the injury. *Pickens v. Boom Co.,* 66 W. Va. 10; *Eells v. Ry. Co.,* 49 W. Va. 65; *Henry v. Ohio Riv. R. Co.,* 40 W. Va. 234. There is no right of action for an injury until it happens, though the instrument causing it may have existed for all time. If the instrument does no harm, there can be no recovery because of its mere existence, even though it threatens harm. This case seems to have been tried on the erroneous idea that it must be shown that the sewers were constructed within five years be- fore the suit. An instruction embodying such proposition was given to the jury on behalf of plaintiff. Yet this erroneous theory could not prejudice the city. In a way, it was favorable to it.

Second: That the open drain or ditch was and is a natural water course.

There was evidence that plaintiff's property was naturally so situated that there was in it a depression of the ground, in which water ran at times. Into this hollow or ravine the collected surface water was thrown so that it was made a damaging body of water. The city insists that this hollow was a natural water course. Generally, there is no lability for damages arising from the casting of collected surface water into a natural water course. But was the hollow through plaintiff's lot a natural water course? Whether it was shown to be a natural water course depends on the evidence. How else can it be determined what it was? That evidence is conflicting. The jury were, therefore, the judges of the facts in this particular. They were instructed as to what facts were necessary to establish the existence of a natural water course. There can be no just exception to the definitions given the jury as a guide in their determining whether or not there was a natural water course through plaintiff's lot. They were told by the court that a natural water course is "a natural stream flowing in a definite bed or channel, with banks and sides, and having a permanent source of supply." They were also told that "a water course is a stream usually flowing in a particular

direction, in a definite channel, and discharging into some other stream or body of water, and the term does not include surface water conveyed from a higher to a lower level for limited periods during the melting of snow or during or soon after the fall of rain, through hollows or ravines which at other times are dry." These definitions are generally recognized by legal authorities. 2 Bouvier's Law Dict. 468, 1219; 21 Amer. & Eng. Enc. of Law 420; 30 Amer. & Eng. Enc. of Law 347; *Neal* v. *Ohio River R. Co.,* 47 W. Va. 316. Yet counsel for the city say that they tended to make the jury believe that the hollow was not a water course simply because water did not flow through it continually. The definitions could not have that effect upon intelligent minds. Taken together they clearly meant that, if there is no source of supply which usually does supply, the ravine or hollow cannot be considered a water course. They in fact told the jury what the law actually says—that there must be some other source of supply than occasional surface water from rains or melted snows. The way was open to counsel for the city to place before the jury explanations of these definitions by instructions embracing further proper considerations as to what will constitute water courses. They sought nothing of this kind at the trial. The definitions were applicable to the evidence in the case. And upon a special interrogatory propounded to the jury at the instance of the city, the jury expressly found that the depression through plaintiff's lot was not a natural water course. No error can be perceived in such finding.

Third: That no more water ran in the hollow after the placing of the sewers than ran there before they were placed.

Whether this alleged fact be true or not, it was the province of the jury to find. It turns on oral evidence of witnesses given in the presence of the jury. They have found, upon a special interrogatory, that the sewers did increase the flow "to a very material extent." That finding enters into the general verdict. Though the testimony may be conflicting in this particular, still there is much evidence to support it. It was distinctly a jury question.

Fourth: That the damage was done from back water from obstruction below, rather than from water flowing from above.

The jury have upon special interrogatory also negatived this

proposition from conflicting oral testimony. We cannot invade their province so to do.   *Coalmer* v. *Barrett*, 61 W. Va. 237.

Fifth : That the verdict and judgment are excessive.

The amount of the verdict is fully supported by testimony. It has been ascertained from facts and data quite as certain as those ordinarily used and held to be sufficient in the ascertainment of damages. *Railroad Co.* v. *Foreman*, 24 W. Va. 662; *Hargreaves* v. *Kimberly*, 26 W. Va. 787; *Miller* v. *Pulp Co.*, 38 W. Va. 558; *Pickens* v. *Boom Co.*, 58 W. Va. 11; *Hurxthal* v. *St. Lawrence Boom & M'f'g Co.*, 65 W. Va. 346. The nature. of the injury being recurrent or intermittent, the plaintiff could recover in successive actions. *Rogers* v. *Boom and Driving Co.*, 39 W. Va. 272; *Henry* v. *Railroad Co.*, 40 W. Va. 234; *Pickens* v. *Boom and Timber Co.*, 66 W. Va. 10. Then in this action no prospective or future damages could be taken into consideration. And it distinctly appears from the record that the trial court allowed no element of prospective or future damages to go into the evidence. The only damages proved were based upon the actual injuries to the property arising from the collected surface water prior to the institution of the suit. Witnesses clearly detailed the items of actual injury to the property. It was shown without the least contradiction that the surface water collected and cast upon the property by the city washed a great hole under the house and washed the soil from the lot in other places: that the washing away of the ground caused the house to settle and thereby to become misshapen; that the plastering was thereby broken and caused to fall off; that the water standing on the floors so injured them that new ones would have to be put in; and that plaintiff and her family were obliged to seek a home elsewhere because of the injured condition of the property. These are only some of the details of actual injury established by the evidence. The exact manner in which the property was injured prior to the suit was detailed to the jury. The plaintiff's husband testified that it would cost $900 to repair all this damage. Another witness, shown to be fully acquainted with the property and the injury done to it, corroborates him as to the amount necessary to put the property in the condition it was before the injury. These witnesses speak only of actual past damages

and the amount necessary to repair the same. Besides, it was shown that plaintiff had been. compelled to expend at least $170 within the five years prior to the suit, in clearing away debris and making repairs after the floods. Surely all this evidence affords a definite basis upon which the jury could find an amount. The city did not even seek to contradict it. Nor was it attacked upon cross-examination. The way was open to test the accuracy of the amounts stated by these witnesses. Yet these amounts stand unimpeached as a basis for the ascertainment of the damages.

Some of the witnesses valued the property as high as $2400. Can we say that the jury did not accept this amount as the true value? The assessment of the property for taxation is not conclusive evidence of its value. 3 Wigmore on Ev., section 1640. By statute, it is now admissible evidence in a suit of this character upon the question of value. Code, chapter 29, section 115. But that statute expressly makes it admissible "with other evidence." Is the amount of the verdict an unreasonable one for all the injury shown to have been done to a property of the value of $2400? It would appear that it is not. But, let us iterate, testimony that stands absolutely unquestioned says that the actual past damage amounted to $900—that it would take that amount to repair the damage. Does not this support the verdict for $750? "In the ascertainment of damages absolute certainty is not required. The causes and probable amount of the loss may be shown with reasonable certainty. Substantial damages may be recovered though the loss can be stated only approximately." *Hurxthal* v. *St. Lawrence Boom & Mf'g. Co.,* supra.

By the majority opinion the verdict and judgment are overthrown because evidence was introduced to show a difference between what the property was worth before it was injured by the surface water and what it was worth after it was so injured by reason of the past damage that was thereby done to it. It is assumed that the witnesses in stating this difference took into consideration the fact that the sewers would damage the property in the future. But how can this fact be assumed when it is not in evidence that the witnesses based a difference in the value upon the future presence of the sewers. As far as this evidence

goes it established a reduction in value by reason of the actual past injury done by the surface water that was thrown on the lot prior to the suit and by reason of no other thing. And such reduction in value was a proper measure of the injury resulting from the actual past invasion of the property. That reduction, mentioned by the witnesses, was based wholly upon the fact of a past invasion of plaintiff's property. It nowhere appears that it was to the most limited extent based by them upon the consideration that the sewers would continue in place, and that in the future they would cause further damages. The witnesses were asked to draw a difference in the value of the property as caused by what had been done, not to draw a difference by anything that might occur in the future. And such difference was drawn in the testimony only by reducing the value of the property at the time of the trial by a consideration of its in-injured condition at that time and not by a consideration of its location in reference to the sewers or regard of future damages likely to happen to it. The general market value of the property, as influenced by a continuing cause of damage near the property, plainly was not made a criterion before the jury. Testimony of future damages never entered into this case. So clearly does this appear that counsel for the city do not even suggest that any element of future damages may have been considered. It is not proper to assume that something outside of the record influenced the jury in fixing the amount of the damages. The extent of the actual past injury and the amount that it would cost to put the property in the identical shape that it was before the surface water injured it were distinctly made the basis upon which the damages were found. Besides, the rulings of the trial court throughout the taking of testimony made it clear that only evidence of past damages was permitted to go to the jury. No jury of ordinary intelligence would arbitrarily take future damages into consideration in view of the way this case was submitted to such jury. No verdict should be overthrown by assuming a fact that has not been made to appear, because the amount seems larger than the Court would have made it. It arbitrarily strikes at the most vital and fundamental of rights so to annul a verdict.

If the verdict is excessive, it is the fault of the city. Why

did it not show, by cross-examination or otherwise, that the damages given in testimony were unwarranted? No exception of any kind was taken to the evidence in relation to the extent of the damages. No bias or prejudice on the part of the jury appears. They were the proper judges of the extent of the damages. We are not authorized to substitute our judgment in this particular for theirs, even if we would find differently. *Miller* v. *Pulp Co., supra.*

Another point is presented. A witness for the city testified that Mrs. McHenry could have filled in and raised her lot at an expense of $200, and thereby prevented damage by the flood turned upon her property. Evidently intended to be founded on this testimony was an instruction which was refused. Had it been given it would have told the jury that if they believed that the plaintiff could have protected her property at reasonable expense, she was entitled to recover nothing beyond the cost of such protection if furnished by her. And all but one of the special interrogatories that were refused were also based on the same theory. It was entirely proper to exclude from the case a proposition of this character. It was, in reason. not incumbent on plaintiff to raise her lot. The property was her own in its natural state. She was entitled to enjoy it without the invasion by the city. The city's turning collected surface water upon it was a positive tort. It would be strange justice to say that she cannot recover because she did not make it impossible for the city to wrong her. Such view would be an absolute reversal of liability for wrong—place it upon the party wronged and not upon the wrong doer. True, after a wrong is committed it is the duty of the party wronged to avoid such damages as may be avoided by reasonable diligence, ordinary prudence, and reasonable expense. 8 Amer. & Eng. Enc. of Law, 605-7; 1 Sedgwick on Damages, ch. 6. But it will be observed by an examination of the authorities that the rule in no case requires more than the exercise of ordinary efforts and the outlay of reasonable expense on the part of the party wronged to avert damages after the wrong has been done. It requires no such extraordinary thing, nor so great an expense, as is insisted upon in this case. *Galveston, H. & S. A. Ry. Co.* v. *Borsky,* (Tex. Civ. App.), 21 S. W. 1011. The plaintiff

was not obliged to use more than ordinary diligence to avert the damages. 1 Sedgwick on Damages, section 221. There is absolutely no evidence that plaintiff did not use such diligence. "What efforts an injured party must make to limit his damages is to be determined by the rules of common sense and fair dealing." 8 Amer. & Eng. Enc. of Law, 606. Common sense and fair dealing did not enjoin upon Mrs. McHenry the filling of her lot at an expense of $200 to her, simply because of the city's wrong. How could that wrong put such obligation on her to stop it? The instruction and interrogatories were therefore unwarranted.

It is assigned that the court erred in refusing to give two other instructions asked on behalf of the city, and in refusing one other special interrogatory. Yet no specific criticism of these refusals is made in the briefs. It would seem that counsel do not rely upon them. At any rate, no error in these particulars is perceived.

The judgment ought to be affirmed. Tested by the record, it is plainly right. There has been a fair trial and the verdict is supported by law and the evidence.

WILLIAMS, JUDGE:

I concur in the foregoing opinion of Judge ROBINSON.