LOWE v. PURE OIL CO. et al.

(Circuit Court of Appeals, Fourth Circuit. April 16, 1919.)

No. 1682.

1. COURTS ⬦329, 330—JURISDICTION OF FEDERAL COURT—AMOUNT IN CONTROVERSY.

Allegation and proof as to the value of the matter in controversy, *held* sufficient to sustain the jurisdiction of a federal court.

2. WATERS AND WATER COURSES ⬦145—EXTENT OF RIGHT BY PRESCRIPTION—PIPE LINE IN BED OF CREEK.

A right acquired by prescription to maintain a pipe line in a creek bed on one side of the stream, *held* not to extend to the other side, so as to give the right to remove the line to that side, to the damage of the owner of the land.

3. JUDGMENT ⬦606—MERGER—ACTION FOR INJURY TO REAL ESTATE—CONTINUING INJURY.

A judgment against a landowner in an action by him for damages for occupation of his land by a pipe line, *held* not to estop him from maintaining subsequent actions where only temporary damages were in issue or considered.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from District Court of the United States for the Northern District of West Virginia, at Parkersburg; Alston G. Dayton, Judge.

Suit in equity by the Pure Oil Company and the Producers' & Refiners' Pipe Line Company against John M. Lowe. Decree for complainants, and defendant appeals. Reversed.

Larrick & Lemon, of New Martinsville, W. Va. (Reese Blizzard, of Parkersburg, W. Va., on the brief), for appellant.

Thomas H. Cornett, of New Martinsville, W. Va., and John W. Dunkle, of Pittsburgh, Pa. (F. V. Iams, of New Martinsville, W. Va., on the brief), for appellees.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge. This was a suit instituted in the Northern district of West Virginia on the equity side of the docket. Bill was filed for an injunction to restrain defendant from trespassing, and also to restrain him from any proceeding, either in law or in equity, for the removal from the creek bed of all pipe lines operated by gravity maintained by common carrier in the extensive transportation of crude oil, and to quiet title.

The plaintiff the Pure Oil Company is a corporation created under the laws of the state of New Jersey, and duly authorized to transact business in the state of West Virginia, and the defendant is a citizen and resident of West Virginia.

The line, four inches in diameter, and in which the 26 rods in question is included, is a part of a system 20 miles long, operated for the past 17 years in piping oil for the public generally from the fields in the vicinity of Jacksonburg to tanks at Pine Grove, and laid in the bed of the South fork of Big Fishing creek, the location of the pipe line in the creek bed enabling the oil to flow by gravitation instead of by a mechanical system, which would be far more expensive; and from the tanks at Pine Grove the oil is piped by pressure to refineries at a distance.

Plaintiff alleges the following grounds as a basis for the relief sought to be obtained: (a) Diverse citizenship, and value of its entire system of gravity oil lines, exceeding $3,000; (b) want of title on part of defendant; (c) right conferred by act of Legislature of 1872–73 (chapter 192), declaring the creek in question a public highway; (d) title in plaintiff by prescription matured by actual possession taken and kept by virtue of said statute, and also under claim of ownership and right, without objection, and with acquiescence, as against defendant and his predecessors.

The defendant moved to dismiss the bill on the ground that the facts alleged did not entitle plaintiff to the relief sought. The answer admits the passage of the legislative act, but says it is declaratory of the common law, and became inoperative, according to its own provisions, within two years after its passage, and therefore conferred no right on plaintiff to lay pipe in the South fork of Big Fishing creek, a floatable stream; and it is further averred that plaintiff never applied to, or had the permission of, any authority, public or private, to lay

the line in question; further, that there is no corporation in West Virginia vested with power to exercise the right of way over any public highway without the permission of some public authority, and any one attempting to establish such right of way over any public highway without the permission of some public authority is a trespasser and liable to criminal prosecution therefor; that the law forbidding the use of a public highway except by such permission is more stringent than the law forbidding the use of private property for public use without payment of compensation; that the creek bed was included in 170 acres of land granted by I. D. Morgan by deed of January 25, 1901, to A. C. Ballouz, who subsequently granted to John M. Lowe, defendant, two parcels of the same by separate deeds dated December 28, 1906 (six lots), extending back almost to the top of the north bank of the creek opposite the point in question, but conceded to be outside the bed, and the other, dated August 11, 1913, for the "strip of land" or creek bed, and under which Lowe, the appellant, bases his claim and title.

The bill alleges adverse possession, and the answer avers the "adverse possession of plaintiff and its lessor, from 1901 to the fall of 1913, of the line in the creek bed." Notwithstanding the admission thus contained in the answer, defendant insists that such possession, under the circumstances, does not apply to the bed, or even the side of the creek bed, and that the line as then laid was in the creek bed owned by A. C. Ballouz, and in the south side, remaining there until defendant bought the bed of the creek from Ballouz, but that line was relaid on top of defendant's land on the opposite or north bank, over his objection, and after his purchase of the creek bed, but before August 11, 1913, the date of his deed.

The answer denies any right of the plaintiff to maintain and operate the line in the creek bed.

It is conceded that the Producers' & Refiners' Pipe Line Company has been and is now engaged in operating pipe line and transporting crude oil. It is further admitted that such line is operated by gravity, and is of great importance, use, and benefit in the economical transportation of oil, as alleged in the bill, but that such facts are immaterial.

[1] First, it is insisted by defendant that the court below was without jurisdiction, inasmuch as the amount involved in the controversy was not $3,000 in excess of cost and interest. This is based upon the theory that the amount involved should represent only the actual cost of removing this line from the south side of the creek to the north side of the creek.

As we have stated, it is alleged in the bill that the value of the entire system of gravity oil lines exceeds the sum of $3,000, and that, owing to the occupancy of the south side of the creek by the railroad in constructing its line, it is in such condition that it would be impracticable to locate the pipe line on that side, and that it was for this reason plaintiff was compelled to change its line so as to operate it for the purpose for which it was intended.

It is insisted by plaintiff that the removal of a part of this line would destroy the entire gravity system in the creek beds, among other things necessitating its removal from tanks at Pine Grove to Jacksonburg, the main connecting lines above Jacksonburg, also necessitating an alteration in a multitude of smaller lines connecting each well with the main line, at a great loss and expense, and thus either destroy the business or necessitate the construction of a pressure system on other lands, involving the purchase of new rights of way, for a distance of more than one mile, over a hill. It is contended that the construction of such line would cost $2,500 for labor done, $3,000 for pump station, and $3,000 for additional pipe, costing in the aggregate from $8,000 to $10,000. This, we think, should be considered in estimating the amount involved in this controversy.

In addition to this phase of the question, it is insisted by counsel for plaintiff that "where a particular matter of itself less than jurisdictional amount or value involves a right or estate as the subject of dispute, which right or estate depends upon the determination of the controversy, the value of the right or estate will fix the jurisdiction."

In Montgomery's Manual of Federal Procedure, § 174, c. 8, it is said:

"Generally speaking, where there is a definite amount that can be determined as being in dispute between the parties, this will fix the jurisdiction."

In view of what we have said as respects this point we think that the court below was warranted in holding that it had jurisdiction.

[2] The plaintiff insists that it is entitled to right of way by prescription which matured "by actual possession taken and kept for more than the statutory period of ten years under claim of ownership and right without objection, and with acquiescence as against defendant and his predecessors." The undisputed evidence shows that plaintiff acquired a prescriptive right by use for more than 10 years, maintaining his pipe line on the south side of the stream. The Supreme Court of West Virginia in the case of Mitchell v. Bowman, 74 W. Va. 498, 82 S. E. 330. The first syllabus is in the following language:

"One who for ten years or more continuously travels a defined way over the lands of another, with the knowledge of the owner, but without the owner's permission, interruption, or denial of the use, acquires the way by prescription."

Also in the case of Walton v. Knight, 62 W. Va. 223, 58 S. E. 1025, the first, second, and third syllabi are as follows:

"A private right of way by prescription may be acquired over another's land by visible, continuous, and uninterrupted use thereof for ten years, under a bona fide claim of right, with the acquiescence of the owner."

"Such use is presumed to be with the knowledge and acquiescence of the owner, and to prima facie give the right; which presumption will be conclusive, unless accompanied by the protest and objection of the owner under such circumstances as to repeal it."

"When there has been such use of another's land for the period requisite to create an easement by prescription, the bona fides of the claim of right is established."

It appears that the pipe line was laid in the south side of the bed of the creek. It further appears that no protest or objection was made

by Ballouz, the predecessor in title of defendant, to the occupancy, either at the time plaintiff first occupied the premises, or at any time during such occupancy.

The contention of plaintiff that it acquired a prescriptive right to use and maintain its pipe on the south side of the stream is not disputed; but in 1913 the plaintiff moved his pipe line to the opposite side of the stream in an entirely new location. The change, according to defendant's evidence, materially damaged his property on the north side of the stream. While, as we have said, plaintiff undoubtedly had a prescriptive right to the south side of the stream, we are of the opinion that such right did not extend to the north side, it appearing that the plaintiff did not occupy the north side of the stream for a sufficient length of time to acquire such right to that side. Plaintiff insists that its possession extended from one bank to the other, and that therefore it acquired a prescriptive right to occupy either side of the stream and any part thereof. We think this position is untenable in view of the purpose for which the side of the stream was used, and that occupancy of the south side did not inure to the benefits of the plaintiff, so as to vest it with title to the north side.

The bill challenges the right of defendant to compel plaintiff to remove this line either by physical or lawful force basing its right upon the fact that the quitclaim deed of defendant does not undertake to confer upon defendant the right to such remedy, further alleging that the absolute right to the premises in question is, as we have said, vested in the plaintiff by operation of law.

This would undoubtedly be true if the question as to the right of plaintiff to occupy the south side of the stream were involved; but, as we have stated, there is no controversy about this point. The plaintiff not having acquired a prescriptive right to the north side of the stream, the title to that portion of the premises remained with the grantor, and passed to the defendant by his quitclaim deed, such interest being vested in defendant's predecessors at the date of such deed.

[3] It is further insisted by counsel that plaintiff acquired title by estoppel by former adjudication of law, it appearing from the answer and evidence that there had been two adjudications, one in favor of defendant and one against him.

It was shown that defendant instituted suit against the Pure Oil Company for damages for the occupation and use of this creek bed, before a justice of the peace, wherein he recovered the sum of $14.50 as damages. It also appears that an action was instituted by defendant against the plaintiff in the circuit court of Wetzel county for damages occasioned by the occupation of the bed of the creek by the pipe line. In that case judgment was in favor of the Oil Company. While no certified copies of these judgments appear in the record, the evidence as to their nature and character is such as to constitute the basis of estoppel, if indeed, the facts are such as to warrant the same. In considering this phase of the question, it should be borne in mind that only temporary damages were involved in the two suits instituted by defendant. As respects this phase of the question it has been held that—

"It is the legal right of either plaintiff or defendant to elect to have permanent damages assessed in such an action upon demand made in the pleadings, and when either makes the demand the judgment may be pleaded in bar of any subsequent action. The defendant is required to set up this or any other equity upon which it relies, as well as to prove the averment on the trial. But where a plaintiff is allowed, without objection, to have such damage apportioned, the judgment is not a bar, and either party to a subsequent suit involving the same question may demand that both present and prospective damages be assessed, and upon proof of a previous partial assessment the jury may consider that fact in diminution of the permanent damage." Ridley v. Seaboard & R. R. Co., 118 N. C. 996, 1009, 24 S. E. 730, 734, 32 L. R. A. 708, 712.

In this case Judge Avery discusses the whole subject very fully and elaborately.

"Where the cause of the injury is in its nature permanent, and a recovery for such injury would confer a license on the defendant to continue the cause, the entire damage may be recovered in a single action; but where the cause of the injury is in the nature of a nuisance, and not permanent in character, but of such a character that it may be supposed that the defendant would remove it rather than suffer at once the entire damage which it might inflict if permanent, then the entire damage cannot be recovered in a single action, but actions may be maintained from time to time as long as the cause of the injury continues." Watts v. Norfolk & W. R., 39 W. Va. 196, 19 S. E. 521, 23 L. R. A. 674, 45 Am. St. Rep. 894; Hargreaves v. Kimberly, 26 W. Va. 787 (9th syllabus), 57 Am. Rep. 121; Smith v. Point Pleasant R. Co., 23 W. Va. 453.

"The case calls for what are designated in the decisions temporary damages. Injury to real estate differs in nature and degree. Under some circumstances, recovery may be had from time to time as damages accrue. Under others, but one recovery can be had, and that includes all the injury the property has sustained in the past and will sustain in the future. Damages recovered in the latter class of cases are called 'permanent' damages, and damages recovered in the former 'temporary' damages. Permanent damages are given on the theory that the cause of injury is fixed and indeterminable and the property must always remain subject to it. The injured party is limited to the recovery of temporary damages, when the injury is intermittent and occasional, or the cause thereof remediable, removable, or abatable. It assumes that the plaintiff himself may be able to remedy the cause of injury or relieve his property from its ill effects, or that the defendant will be induced or compelled, by the infliction of repeated judgments for damages, to remove it." McHenry v. Parkersburg, 66 W. Va. 533, 535, 66 S. E. 750, 751, 29 L. R. A. (N. S.) 860, 863.

If the plaintiff's testimony be true that it will be necessary to remove the pipe line, and take it around in another direction at an expense of several thousand dollars, the pipe line, as now located, should then be regarded as a permanent structure similar to a railroad actually constructed. In that case all the damages, both past and prospective, should have been assessed in the actions brought by the plaintiff, and, even if the plaintiff had sought only damage up to the time of the action, the defendant would have had the right to have all the damages assessed in the one action. But, on the other hand, if the defendant's testimony be true that the pipe line could be replaced on the other side of the stream at a cost of only two or three hundred dollars, and with inconsequent risk from the railroad operation, then it would be presumed that the Oil Company would make the removal, and the plaintiff could recover only the damages accruing to the date of the recovery. In the latter event, the case would clearly fall under McHenry v. Parkersburg, supra.

It appears from the record that the case in the magistrate's court, as well as the one in the circuit court, was for temporary damages. The burden was on the plaintiff to show, from the record or otherwise, that in the former adjudication both permanent and temporary damages were involved and adjudicated. This burden not having been met, it follows as a matter of law that the former judgments did not adjudicate the right of the defendant to damages accruing after those adjudications.

For the reasons stated we are of the opinion that the court below erred in denying defendant's motion to dismiss the bill. The decree of the lower court is reversed, with instructions to dismiss the bill.

Reversed.