# CHARLESTON.

WATTS *v*. NORFOLK & W. R. Co.

Submitted January 15, 1894.—Decided March 31, 1894.

1. GRANT—DAMAGES—RAILROAD COMPANY.

When one grants to a railroad company a strip of land for its use in the construction of its railroad, all damages to the residue of the tract arising from construction, which can be taken into consideration in the assessment of compensation under proceedings for condemnation, are released, and he can not recover therefor against the company, nor can his subsequent alienee of such residue. (p. 199.)

2. CONDEMNATION OF LAND.

Principles for assessment of compensation in condemnation proceedings discussed. (p. 200.)

3. GRANT—RAILROAD COMPANY—FERRY.

Injury to a private ferry in case of such grant as above supposed, arising from obstruction of one of its approaches by the proper construction of the railroad can not be the subject of an action by the landowner against the company. (p. 202.)

4. GRANT—DAMAGES—PRIVATE WAY—ROADS.

In case of such grant, injury to a private way from such construction is not the subject of an action, but injury to a public road, peculiarly affecting such landowner, is. (p. 203.)

5. GRANT—DAMAGES.

In case of such grant, injury to a dwelling house upon such residue from the careful blasting of rock in construction is not the subject of an action; but rock so deposited on such land must be removed within a reasonable time, else it will form the basis of an action. (p. 205.)

6. GRANT—DAMAGES—NUISANCE.

A fill or bar made in a stream by blasting and throwing into it rock and other refuse material in the work of construction of such railroad, which fill is not necessary for the construction and maintenance of the railroad, and which entails injury to a mill situate on such residue, is a private nuisance, and ground of action against the company. (p. 206.)

7. GRANT—DAMAGES—NUISANCE.

Where the cause of injury is in its nature permanent, and a recovery for such injury would confer a license on the defendant to continue it, the entire damages may be recovered in a single action; but where the cause of injury is in the nature of a nuisance, and not permanent in character, but such that it may be supposed that the defendant would remove it rather than suffer at once entire damages, which it might inflict if permanent, then the entire damages, so as to include future damages, can not be recovered in a single action, but actions may be maintained from time to time as long as the cause of the injury continues. (p. 207.)

8. GRANT—DAMAGES.

Where an actionable wrong by the defendant is shown, the plaintiff may recover nominal damages from the mere fact of such wrong; but, if compensatory damages are asked, the plaintiff must in some way show, by evidence, data and means by which the jury can ascertain and fix the amount of damages. The jury can not go by merely arbitrary conjecture. (p. 209.)

9. FLOATABLE STREAMS—DAMAGES—NUISANCE.

A dam erected in a floatable stream to furnish power to operate a mill useful to the public, under authority duly had from a county court, is not a public nuisance, though without sluice, and

though it obstruct navigation; and a railroad company which, by an unlawful act in the construction of its road, inflicts injury upon the mill, can not excuse itself for the wrong by the plea that such dam is a public nuisance. (p. 211.)

10. NUISANCE.
Public nuisance—right of private abatement discussed. (p. 112.)

11. NEW TRIAL.
A new trial will not be allowed because the jury disregarded an instruction erroneous in law. (p. 213.)

CAMPBELL & HOLT for plaintiff in error cited Code (1887) c. 43, s. 31; 32 W. Va. 6; 3 Gratt. 632; 29 W. Va. 407; 17 S. E. Rep. 536; Abb. Tr. Br. 42; Pierce R'ds 159-161, 496; 2 Wood R'y 761; Metc. (Mass.) 563; 1 Wood R'y 601; Wood May. Dam. 141; Sedg. Meas. Dam. (5th Ed.) 155; 3 Suth. Dam. §§ 1038, 1039, 1041; 1 Suth. Dam. § 9 et seq.; 1 Suth. Dam. § 2; Code (1891) c. 44, ss. 24, 27; 33 W. Va. 14.

MARCUM & PEYTON for defendant in error cited Code (1891) c. 44, ss. 24, 7; 33 W. Va. 307; Id. 39.

BRANNON, PRESIDENT:

In an action of trespass on the case by Harrison Watts against the Norfolk & Western Railroad Company in the Circuit Court of Wayne county, Watts recovered judgment for one thousand and seventy four dollars, and the company brought the case to this Court by writ of error.

In his declaration Watts complains of several wrongs done him by the company. The first wrong complained of is that the railroad company built a stone wall below his milldam extending into and above the same, and filled in on both sides of said wall with earth, stones and other substances, whereby the current of Twelve Pole creek was diverted, impeded and obstructed, and caused to run against the plaintiff's gristmill and sawmill, and that caused the bank on which the same are built to be cut away and undermined, thereby diminishing and destroying the capacity of the water wheel to operate and propel the machinery of said mills, and their capacity to grind grain and saw lumber, and injuring his land. Let us take up first this ground of action.

By deed dated March 20, 1890, Chapman Fry conveyed to the West Virginia & Ironton Railroad Company a strip of land for the construction of its railroad, which strip was transferred to the Norfolk & Western Railroad Company, being a strip out of land owned by Fry; and afterwards, on May 5, 1891, Fry conveyed to the plaintiff, Watts, the said land, reserving and excepting the right of way conveyed to said railroad company by said deed of March 20, 1890. Thus the company had the older and better right to the land conveyed to it for right of way, with all rights and privileges going with such right under the law. It had the right, as owner thereof to use it as it pleased for the purpose of the construction of its road, provided it used the same in a prudent, reasonable way, considering the nature of its use, and not in an improper, negligent way, inflicting unnecessary injury on others. It had the right, as against Fry, to build a wall to stay and support its roadway and protect it against the inroads of the stream. Suppose this wall, if built in a proper manner, did entail permanent injury upon Fry by the diversion of the stream's current againsts his mills, lessening their capacity, or injuring the banks, he can recover no damage on that score.

If, instead of acquiring the right of way land by purchase, the company had caused it to be condemned for its use, the compensation to Fry would include, not simply pay for the land actually taken, but damages to the residue of the tract. I will not enter upon any elaborate argument to prove that such injuries or damages as are complained of as resulting from said wall would be considered and taken into the assessment of damages upon an inquisition in a condemnation proceeding under section 14, c. 42, Code 1891, they being such as might be reasonably anticipated from the use to which the land was to be devoted, and naturally, directly and proximately resulting from such use of the land. I will refer to the following authorities touching the subject of what elements are to be considered in fixing compensation, not for the land taken, but for damages to the residue: *Railroad Co. v. Shepherd,* 26 W. Va. 672; 2 Wood, R. R. §§ 258, 259. The sum is to cover past, present and prospective damages to such residue

that are the natural, necessary, or reasonable incident to the work. 3 Sedg. Dam. 164. From such damages to the residue, but not from compensation for the land actually taken, may be deducted peculiar benefits to be derived in respect to such residue from the work; not benefits of a general character, shared by the owner of the residue in common with other owners.

Authorities bearing on the question of what benefits may be so deducted are the following :—*James River & K. Co.* v. *Turner*, 9 Leigh, 313 ; *Muire* v. *Falconer*, 10 Gratt. 18 ; *Mitchell* v. *Thornton*, 21 Gratt. 164 ; *Railroad Co.* v. *Tyree*, 7 W. Va. 693 ; *Railroad Co.* v. *Foreman*, 24 W. Va. 662. Injury, though unforeseen, is yet presumed to have been considered in the assessment. 2 Wood, R. R. 1034 ; *Aldrich* v. *Railroad Co.* (53 Am. Dec. 212.)

As Fry could not recover from injury from such wall, neither can Watts, as he purchased from Fry later, and in law, and by the reservation in his deed, in fact subject to the railroad company's right. The fact that the company claims, not under condemnation, but under a purchase or grant, does not alter the case, and entitle Watts to recovery from injury from the wall, because a grant of right of way is a waiver of all such damages as are assessable under an inquisition, as, in such case, if the grantor did not intend to waive damages, he should have provided against injury. Opinion in *Horstman* v. *Railroad Co.*, 18 B. Mon. 222 ; Mills, Em. Dom. § 110 ; *Norris* v. *Railroad Co.*, 28 Vt. 99 ; *Babcock* v. *Railroad Co.*, 9 Metc. (Mass.) 553 ; 1 Wood, R. R. 698 ; *Hatch* v. *Railroad Co.*, 25 Vt. 49, 69 ; 2 Redf. R. R. 23 ; Pierce, R. R. 133 ; *Conwell* v. *Railroad Co*, 81 Ill. 232 ; *Boothby* v. *Railroad Co.*, 51 Me. 318. Though, in such case, there be damage, it is *damnum absque injuria*—damage without violation of a right. *Rood* v. *Railroad Co.*, 18 Barb. 80.

The case of *Railroad Co.* v. *Smith*, 111 Ill. 363, is very apt in this case. It held on common-law principles that, "when anything is granted, all the means to attain it, and all the fruits and effects, are granted also by presumption of law and will pass inclusive together with the thing by the grant of the thing itself, without the words 'with its

appurtenances,' and any like words;" that when the grant is for a certain use, neither the grantor nor one claiming under him can object to such use, and recover damages resulting therefrom ; that "where a person conveys a right of way over his land, it will be conclusively presumed that all the damages to the balance of the land, past, present, and future, were included in the consideration paid him for his conveyance, the same as an assessment of damages on a condemnation would be presumed to embrace."

It was a grant of a right of way to a railroad. What can be the difference for present purposes between a grant and condemnation? The one is a voluntary grant, the other is a legislative grant. They both equally divest the owner of his rights. The voluntary alienation should go at least as far as the compulsory one, and be favorably construed in favor of the alienee. In reason, the above proposition must be true, since it would be unreasonable to say that a free and voluntary grant of right of way would not confer immunity against damage incident to its proper use, while a compulsory condemnation would do so.

If this wall had been built in a negligent and improper way, imposing injury upon the residue of the land, which, in the exercise of due and proper care, could have been avoided, it would be different; for neither a right of way conferred by grant nor one conferred by condemnation will give exemption from damages consequential upon the improper or negligent exercise of the right and not from the fair, proper and reasonable exercise of it, for the reason that neither in making such grant nor in the assessment upon an inquisition are damages contemplated or included that are to be solely attributed to such misuse of the right. The grant is a defence as to all acts done within it, not outside it. *Railroad Co.* v. *Daniel,* 20 Gratt, 344, 375 ; Lewis, Em. Dom. § 482; Mills, Em. Dom. § 220; 2 Wood, R. R. 1004; 3 Sedg. Dam. § 1100.

Authorities that for negligent construction the party is liable outside the statute by common-law action, unprotected by the condemnation, are found everywhere; and as Mr. Sedgwick says, *ubi supra,* the rule is universal. There is no evidence that such wall was not in itself a prudent

construction in building the railroad, or that it was not properly constructed, or that any injury it worked was avoidable. No damage could be recovered on account of it.

The second wrong imputed by the declaration to the defendant is that a private ferry over the milldam in Twelve Pole creek had long existed, used by the patrons of the mill in passing to and from the mill with grain, and its products when ground, and by the construction of the road-bed the approach to it on one side of the creek had been destroyed. The principles above stated apply to this private ferry. Damage to it, as incident to or consequential upon the use of the right of way, was covered by its grant. No recovery could be had for the destruction of this ferry.

These principles were not observed in the instructions given in the case, at least as to the wall. In instruction No. 8, given as one of three in lieu of certain ones asked by plaintiff which the court rejected, the court tells the jury that if the defendant in building its road "committed any of the acts set out in the declaration," whereby the channel of the creek was diverted from its natural course, and thereby caused the water to flood the water wheels running the machinery of the mills, diminishing their power and usefulness, they must find for the plaintiff. This included the wall as a factor in the work of injury in the very wide and general statement of the hypothesis of the instruction, and, without regard to the question, whether it was properly or improperly constructed under the grant of right of way, seeming to brand it as an unlawful structure imperatively calling for damages.

Instruction 10 is that, if the defendant committed "any other act" complained of in the declaration, injuring the plaintiff's property, it was liable. What other acts are referred to? Instruction 9 spoke of injuries to the ferry and to the road below spoken of, and perhaps "other act" refers to acts other than those injuring the ferry and road; but it is indefinite, and not plainly intelligible to a jury. But, give it that construction, and it is wrong, for the additional reason that it includes all other acts, including the wall, propounding unreservedly the proposition of the

absolute liability of the company for any act injuring the property.

A third wrong complained of is that a public road crossed said creek just below the mills, affording a crossing to the public, and enabling patrons of the mills to reach them, and that in constructing its road the company had destroyed this road and crossing. Neither a condemnation by law nor grant of right of way will justify destruction of a public highway in the construction of a railroad. The statute on the subject (clause 6, § 50, c. 54, Code) provides that, when the work interferes with a highway, it shall be restored to its former condition. *State* v. *Monongahela R. R. Co.*, 37 W. Va. 108 (16 S. E. Rep. 519).

As the law thus contemplates that the company will provide for the continued usefulness of the highway, of course, at the time of condemnation it is not anticipated that a highway will be destroyed or left materially injured in the work, and nothing is or can be assessed for damages thereto, except the proceeding be to condemn it as a highway under clause 6, s. 50, c. 54, and therefore the condemnation gives no protection against indictment or civil action for its destruction or injury beyond that contemplated by law to a highway. *Gear* v. *Railroad Co.*, 43 Ia. 83. Neither does one who grants right of way contemplate that a highway will be destroyed. In fact, the party whose land is granted or taken does not own the highway. He may own the mere land or soil, but not the way. The public owns that. He has only a citizen's interest in it. By no reasonable argument can it be maintained that he intended to waive his right in the highway.

But in the case of a private way it is different. Injury resulting to it from the proper, reasonable, and lawful use of the land granted or condemned is covered by the assessment or grant, unless provided against in the grant. By express provision of section 14, c. 42, Code 1891, no damages can be assessed for private crossings in condemnation of land for railroad use; but the company must construct and forever maintain them. This is a prudent provision, since without it likely the land owner would have no right to cross, as the assessment of the compensation would,

legally speaking, include the injury resulting from inconvenient access or non-access to the divided parts. 2 Wood, R. R. 1045; Lewis, Em. Dom. § 496; 3 Sedg. Dam. § 165; *Mason v. Railroad Co.*, 31 Me. 215.

It seems that where there is no such provision, and where the condemnation vests in the appellant only an easement, leaving title in the owner, he may cross by means of crossings made by himself at proper times, and in proper places, so as not to hinder the operation of the railroad; but where the absolute title goes out of the owner, and vests in the applicant, he can not cross. This distinction is plainly drawn in the two cases of *Railroad Co. v. Waterbury*, 23 Conn. 109, and *Railroad Co. v. Allen*, 22 Kan. 285 (31 Am. Rep. 190) cited in 2 Wood, R. R. 903. The grantor must provide for crossings in his grant. So where one conveys to a railroad company the absolute estate in a strip of land, why does it not confer absolute dominion, and what gives him right to exercise a privilege that may seriously detract from the use for which it was required? In this state the entire estate vests in land condemned for railroad purposes. Code 1891, c. 42, s. 18.

The grant in this case was of the fee in the land. Therefore, if the way be private, there can be no recovery of damages for it, as the owner can not, on his own land have a private way, independent of his right to the land; and the way goes with the land by condemnation or grant, and injury to it is presumed to have been considered. 2 Wood, R. R. p. 1067, § 261; *Clark v. Railroad*, 24 N. H. 114. There was no evidence that said road was public, other than mere long user by the public, which is insufficient to establish it as a public road. *Talbott v. King*, 32 W. Va. 6 (9 S. E. Rep.) 48.

The court gave instruction No. 9, saying that, if the defendant constructed its road upon the location set out in the deed from Fry, then it was not liable for damage to the road or ferry, unless the road and ferry were public, and, if public, it would be liable. This instruction is faulty —First, because it submitted a question of fact not in issue—that is, whether the ferry was a public ferry, and, if so, directed the jury to award damages for injury to it,

when there was no pretense in the declaration that it was a public ferry; and faulty, secondly, because it submitted the question of fact whether the road was public, and, if so, directed the jury to award damages for its injury, when there was no evidence to establish it as a public road save mere user.

A fourth point of complaint in the declaration is that the defendant company, by blasting rock, and throwing them through and into the dwelling-house and mills, did damage thereto. Is this a ground of recovery? It is not. The distinguished Chief Justice Shaw discussed this subject, saying: "An authority to construct any public work carries with it authority to use the appropriate means. Authority to make a railway is an authority to reduce the line of the road to a level, and for that purpose to make cuts, as well through ledges of rocks as through banks of earth. In a remote and detached place, where due precaution can be taken to prevent danger to persons, blasting by gunpowder is a reasonable and appropriate mode of executing such a work, and, if due precautions are taken to prevent unnecessary damage, is a justifiable mode. It follows that the necessary damage occasioned thereby to a dwelling-house or other building, which can not be removed out of the way of such danger, is one of the natural and unavoidble consequences of executing the work, and within the provisions of the statute. Of course this reasoning will not apply to damage occasioned by carelessness or negligence in executing the work. Such careless or negligent act would be a tort, for which an action at law would lie against him who commits or him who commands it. But where all due precautions are taken, and damage is still necessarily done to fixed property, it is alike within the letter and spirit of the statute, and the county commissioners have a right to assess the damages." *Dodge* v. *Commissioners*, 3 Metc. (Mass.) 380. The damage to buildings, being simply incidental to the construction of the work contemplated in the condemnation or grant of land for right of way, is presumed to have entered into consideration, and recovery is barred thereby, whether in fact regarded or not. The same doctrine is maintained in 2 Wood, R. R. pp

1058, 1066, § 260 ; *Brown* v. *Railroad Co.*, 5 Gray, 35 ; *Whitehouse* v. *Railroad Co.*, 52 Me 208 ; *Sabin* v. *Railroad Co.*, 25 Vt. 363 ; *Dearborn* v. *Railroad*, 24 N. H. 179.

This doctrine is based on the principle above stated, that in condemning entire damages are allowed—a sum to cover all damages, past, present, and prospective, that are the natural, necessary, or reasonable incidents of the work ; but not such as may arise from negligent or otherwise improper construction or use.    3 Sedg. Dam. § 1164.    To avoid misconstruction, I will say that above I speak of damage to lands of an owner, part of whose lands have been condemned by legal process to the public use, not to one whose buildings are injured by blasting, and none of whose land has been condemned ; for in the latter case there is no inquisition to protect the party doing the injury, and he is liable for such injury.    *Hay* v. *Cohoes Co.*, 2 N. Y. 159 ; *St. Peter* v. *Denison*, 58 N. Y. 416 ; *Carman* v. *Railroad Co.*, 4 Ohio St. 399 ; 3 Suth. Dam. § 1051.

Another point of complaint in the declaration is that rock and other matter blasted into the creek and there remaining, and rock and other material thrown over the bank, narrowing the creek channel, did injury by diverting the water against the mill and opposite bank, lessening the power of the water wheels, and destroying the bed of said road and the crossing of the creek, and a part of said road.    Now, rock blown upon the remaining land of Fry in the creek or elsewhere could not be suffered to remain, though the original casting of them there was lawful, but they must be removed within a reasonable time.    *Sabin* v. *Railroad Co.*, 25 Vt. 363 ; 2 Ror. R. R. 784 ; 2 Wood, R. R. § 260, p. 1066.    So any debris not fairly necessary for the construction and maintenance of the road, inflicting injury, would be actionable, and would sustain this action.    It would be negligent, improper exercise of the right granted.    Under the record, I see no other ground of recovery ; but I think that ground does sustain the action to the extent of recovery for damage attributable to such rock and other debris, not necessary as a part of permanent structure.

The evidence of the defendant, by its engineer, makes it

clear that the "fill" or "bar" as called in the evidence, made up of rock and other material, was not at all necessary for the support or benefit of the railroad, and could not be justified under its authority to build the road if it has injured the plaintiff. But as to injury from such debris we think there is error as to instructions.

The defendant asked, but was refused, instructions 1, 2, and 4, which announced the position that if there was a liability on that score, recovery could be had for only such damage as resulted from such debris prior to the commencement of the suit. The position taken by counsel for defendant before the trial-court, as evinced by those instructions, was that any injury flowing from rock, earth or other material cast into the creek, and left there, not necessary in the construction of the railroad, was not permanent in nature, but remediable with the removal of the same, and that in this one suit there could not be a recovery of damages for all time to come as for a lasting and permanent injury; and this position was, I think, correct. The doctrine is exemplified in cases of our own.

Take the case of *Hargreaves* v. *Kimberly*, 26 W. Va. 787. The syllabus lays down the law comformably to authority generally that, "where the cause of the injury is in its nature permanent, and a recovery for such injury would confer a license on the defendant to continue the cause, the entire damage may be recovered in a single action; but where the cause of the injury is in the nature of a nuisance and not permanent in character, but of such a character that it may be supposed that the defendant would remove it, rather than suffer at once the entire damage which it might inflict if permanent, then the entire damage can not be recovered in a single action, but actions may be maintained from time to time as long as the cause of the injury continues." See *Smith* v. *Railroad Co.*, 23 W. Va. 451; *McKenzie* v. *Railroad Co.*, 27 W. Va. 306.

To recover for permanent injury the declaration must show an intent to claim for permanent injury (cases just cited) and here the declaration, we may say, so claims as to injury wrought by such debris; but, the nature of the cause of injury being impermanent, the character of the declara-

tion could not entitle the plaintiff to recover for future injury, and thus take away from the defendant the right to remove the source of injury upon a judicial determination that his action was indefensible, and burden him at once and irrevocably for damage in future, not yet accrued. The case of *Hargreaves* v. *Kimberly, supra*, will support this position. All the acts imputed to the defendant, defensible and indefensible, are not permanent causes of injury in nature, and most certainly the debris not part of or necessary to the stability of the railway are not.

The two following instructions were refused, and, I think, ought to have been given. While no one questions that a jury must judge of the amount of damages, yet to give anything more than merely nominal damages—to give compensatory damages—the jury can not act arbitrarily, but must have data according to the nature of the subject, so as to have some measure or standard to go by. There is some basis for estimation, perhaps, as to the sawmill, but as to the mill there is only evidence to show a certain per cent. of diminution of capacity, and what the usual earnings were is not shown, and there is no showing of loss of earnings, and no evidence of how much more time was consumed in grinding for custom from loss of capacity, or what its cost, or how much was the loss incident to the diminution of the mill's capacity. Not even opinion evidence or estimate appears. The jury would have to conjecture in fixing a sum.

"No. 5. The jury are further instructed that the burden is upon the plaintiff to prove to them the damages, if any, which he has suffered by reason of the alleged wrongful act of defendant, and wherein and what such damages are; and, if the plaintiff has failed to prove any damages, although he proves the wrongful act by defendant whereby his water power was diminished, the jury can give only nominal damages."

"No. 6. The jury are further instructed by the court that if the plaintiff would recover for loss of profits in operating said mill consequent upon the alleged wrongful act of defendants, it is his duty to prove wherein, when, and what profit he lost, and the amount thereof, as near as may be;

and it is not sufficient for him to prove simply that his water power has been diminished, thus lessening the amount of work done in a given time, but he must go further, and show that custom and work were tendered, and refused because of capacity to meet the demand, or that it took him so much longer to accommodate the custom so offered and prove with some degree of certainty or approximation the extra time so required and cost expended."

The court, on defendant's motion, gave the following instruction : "No. 7. If the jury believe from the evidence that plaintiff's milldam extends from shore to shore in Twelve Pole creek, and is of an average height of six feet; that the same is without sluices or flood gates, and is an obstruction to the passage of fish and the navigation of said creek, and that the said creek is a navigable stream— then they are instructed that said milldam is a public nuisance, and the plaintiff can not recover for any injury thereto caused by the defendant."

This mill was erected under an inquisition taken in 1839. The dam was nearly all washed away by freshet, and rebuilt between 1870 and 1875, without leave to rebuild, and again washed out in 1884, and rebuilt under leave of County Court. It is contended that, as this dam was without sluice or flood gate, it was an obstruction to navigation and the passage of fish, and that the County Court was without jurisdiction to authorize its original erection, or the reparation of the dam ; and, if so, there is no authority to justify the existence of the mill, and it is a nuisance, and no injury done to it by the defendant is actionable. The County Court had jurisdiction to grant leave to erect mills. It would be going far to say that if it authotized a mill in a proper proceeding which would obstruct navigation or fish, or omitted due provision against such obstruction, its action would be utterly void, and confer no authority.

But the mill act existing when this mill was allowed (chapter 235, Code 1819) required the inquisition to report whether a mansion house would be overflowed, and whether, and in what degree, the passage of fish and navigation would be obstructed, and whether the health of the neighborhood would be annoyed; and, if a mansion should be

overflowed, or health of the neighborhood annoyed, there was a positive prohibition against granting authority, but not so as to hindrance of navigation or passage of fish, but as to that the matter was left to the discretion of the court, and, if the leave was given, it only commanded that the party be put under condition for preventing obstruction of navigation or passage of fish, if the dam would be an obstruction. Would you say that leave to erect would be void for that cause after the court exercised its discretion and judgment? I think not. But if you could possibly say so in such case, you can not in this instance, for the reason that the inquisition found and reported that the mill would not obstruct navigation or passage of fish. Surely the order of the court would not be void, if afterwards it was found that the inquisition did not speak the truth.

This view is expressly held in *Crenshaw* v. *Slate River Co.*, 6 Rand (Va.) 245, laying down that, as the law required the inquisition to report whether the passage of fish or navigation would be obstructed by the proposed mill, if it reported that the mill would not obstruct them, "then leave is granted to erect the mill, without any condition as to navigation;" and that "such a grant, under such precautionary proceedings, is a perfect one, and vests in the grantee all the public rights to the stream, or so much thereof as is necessary to the full enjoyment of the mill erected under such order."

Thus it seems that the public right of navigation was subordinate to the right of the mill-owner. Mills were of prime necessity, and before the use of steam, water-power was indispensable; but now, since the wide use of steam-power has been adopted, and use of streams for floatage of timber has become more productive of reward, the old water gristmill has been almost relegated to the past, and is denominated a nuisance.

But the mill involved in this case had a lawful title under lawful grant in the start, and unto this day that title is preserved by not merely its original force, but by the letter of section 24, c. 44, Code, providing that any dam or other thing in a water course obstructing navigation or

passage of fish shall be deemed a nuisance, "unless it be to work a mill, manufactory or other machine or engine useful to the public, and is or has been allowed by law or order of court." Can it be that important mills and manufactories built under due process of law, vesting title and property rights in their owners, can be assailed by any one in collateral proceedings, even if they could be assailed by the state itself, or a citizen personally interested, by a direct proceeding?

In the *Crenshaw Slate River Case, supra,* it was held that even the legislature could not authorize the abatement of such a dam under the constitution. I am expressing no opinion as to the right of the state, or even persons peculiarly interested in navigation, by proper proceedings under reservations as to navigation in the complicated statute law of the present and former years to remove such dams; but I speak of the right of a railroad company, or of anybody not so interested, in this collateral way, to damage a mill-owner's right, and justify under the plea that the mill is a nuisance.

A reference to the opinion by JUDGE GREEN in *Gaston* v. *Mace,* 33 W. Va. 14 (10 S. E. Rep. 60) will show that the mill-owner's right is fully recognized as co-existing along with the right of floatage, not as a nuisance, but a lawful right under the law. It is there recognized as a right resident in riparian proprietor. This dam was rebuilt by leave of court, and the leave was not void. At any rate, it could not justify the defendant for a wrong. *Smart's Case,* 27 Gratt. 950. And, suppose there were no order of court to build the dam, I think with Judge Bouldin in *Field* v. *Brown,* on page 93 of 24 Gratt. that there may be a dam in a stream without order of court by grant or prescription. And a riparian proprieter may erect a dam and mill under his right of dominion over his own property without order of court, even though the stream be floatable. So spoke JUDGE GREEN on pages 25, 26, of 33 W. Va. (page 60 of 10 S. E. Rep.) in *Gaston* v. *Mace.* The owner may be punishable for taking toll, and his right may be subject to the right of the state or of persons personally interested in navigation; but not as to others. Even one exercis-

ing the right of floatage can not willfully or negligently injure such a dam.

But, for argument, say that this dam is a public nuisance. What then? Suppose the state or an individual having a personal interest in the use of the stream for floatage (for the evidence shows it to be a floatable stream, under *Gaston* v. *Mace, supra*) suppose they could by judicial proceedings abate it, it does not follow that the defendant could injure the plaintiff's property, and claim immunity, because the dam is a nuisance. The defendant was not using the stream for floatage, nor shown to be peculiarly interested in it as a floatable stream. Were it a nuisance, there the dam was in fact in possession of plaintiff as property. Could the defendant without process abate it as a nuisance?

We must take the statement often met with in the books, that a public nuisance may be abated by any person, with many grains of allowance. No one can maintain a civil action for a public nuisance, unless he sustain special damage therefrom, different from that sustained by the rest of the public. 3 Bl. Comm. 2191; 4 Bl. Comm. 167; Wood, Nuis. § 618; *Talbott* v. *King*, 32 W. Va. 6 (9 S. E. Rep. 48); Sedg. Dam. § 34, p. 946; 3 Suth. Dam. § 1057. And it is said that no one can by his own act abate a public nuisance, unless he have such interest as to give him an action. Wood, Nuis. § 730. There is a grave difference of opinion as to abatement of a purely public nuisance by the mere act of the party. Some contend that no one not interested personally and peculiarly otherwise than other persons can do so, while others hold that any one may do so. Mr. Wood and Judge Cooley hold the former, and Mr. Bishop and Mr. Hilliard the latter, view. Wood, Nuis. § 729 *et seq.;* Cooley, Torts, 45, 46; 1 Bish. Cr. Law, 828; 1 Hil. Torts, 605.

It seems to me that, except in particular cases where emergency of some kind calls for it, and delay is dangerous, or at least inconvenient, the former is the more logical and reasonable view looking at the preservation of peace and the security of private property. It would be endless and useless to pursue this point further here. It can not be said that there is any absolute general rule on the subject uni-

versally applicable, but each instance stands on its own features, as will appear from the many cases enunciating diverse opinions, many of which will be found collected in 16 Am. & Eng. Enc. Law, 991, note 4. As to highways, under the decisions, the right of abatement by the mere act of the party prevails. The reason here applies given in 3 Bl. Comm. 5, as the basis of the right in any one to abate a public nuisance—that the law allows a summary remedy of abatement of nuisance to do one's self justice, because injuries of this kind, which obstruct or annoy such things as are of daily convenience and use, require an immediate remedy and can not wait for the slow progress of the ordinary forms of action. Aug. & D. Highw. § 274.

The Virginia case of *Dimmett* v. *Eskridge*, 6 Munf. 308, sustains this right to any one to abate an obstruction in a highway by exonerating parties tearing out a dam not built at the point where it was authorized, which destroyed a ford which was part of a public road. So it seems to me that if this dam were a nuisance, the railroad company, having no special interest in navigation, could not abate the dam directly. There would be no emergency calling for such action without legal process. If it could not do so directly, it could not do so indirectly by the acts charged against it. Nay, even if it could abate the dam itself directly, it could not go further, and injure the mill building, and tear away the bank of the creek, for the right of abatement vested in it or in citizens' floating rafts would be only to remove the dam itself. But its action in making the fill, if it injured the plaintiff, operated to injure, not the offending dam, but the mill and soil. In the abatement no means could be lawfully used to work such injury. All the authorities agree that where the right of abatement by private act does exist, it must go no further than to remove that which works the nuisance, doing injury no further than is necessary to accomplish that end. Cooley, Torts, 48; Wood, Nuis. § 834; *Smart's Case*, 27 Gratt. 950; 16 Am. & Eng. Enc. Law, 994. So instruction 7 does not state the law correctly.

It is said that the jury disregarded it in their verdict, and for that reason the appellant asks that the verdict be

set aside. Being incorrect, though the jury found contrary to it, is no ground for new trial. *Armstrong* v. *Keith*, 20 Am. Dec. 131, and note; *Peck* v. *Land*, 46 Am. Dec. 368; *Wellborn* v. *Weaver*, 63 Am. Dec. 235; Hil. New Trials, § 4.

For these reasons the judgment is reversed, the verdict set aside, a new trial granted, and the case remanded.