14907

JONES v. SOUTH CAROLINA POWER CO.

(4 S. E. (2d), 625)

April, 1938.

*Messrs. Williams & Busbee,* for appellant,

*Messrs. Hendersons & Salley,* for respondent,

June 28, 1939.

*Per curiam.*

In this action the recovery of damages in the sum of $3,000.00 was sought. The delict charged is that the defendant company destroyed a quantity of plaintiff's timber, wood and other property that was especially reserved to him in a right-of-way deed or contract.

The complaint alleged that some time prior to December 23, 1936, the company, a public service corporation, had been negotiating for a right-of-way over a tract of land owned by plaintiff in Aiken County; that after the negotiations had progressed to a point where notice was given that the right-of-way would be established by condemnation, the parties agreed upon a price therefor, and a deed accordingly was made by plaintiff to the company conveying to it the strip of land described therein, such conveyance

being executed and delivered upon the following express condition, among other things: "It is understood that all timber cut on the above strip is to remain the property of the grantor and that the South Carolina Power Company, its successors, agents or assigns will cut and trim up such timber and place the logs or poles near the edges of said strip and shall trim and pile the pine limbs so that they may be used for wood." It was further alleged "that it became the duty of the defendant, its agents and representatives, in clearing the aforesaid right-of-way, not only to carry out its specific agreement to trim the logs or poles and place them at the edge of the right-of-way, and to trim the pine limbs and put them there also to be used as fire wood; but it became its further duty not to go beyond the right-of-way and do any damage to the adjacent property of the plaintiff"; but, "in disregard of its said duty and in the furtherance of a scheme to convert and destroy plaintiff's valuable timber denominated as logs or poles, the defendant and its agents and representatives * * * entered upon the premises, pursuant to the license granted to them, and cut down and cut into short odd lengths plaintiff's said valuable logs and poles, rendering them fit for no purpose at all, except fire wood, and scattering the limbs of the pines, without trimming them, over the right-of-way and over the property of the plaintiff beyond the right-of-way, injuring said property beyond the right-of-way, and trampling down the undergrowth outside of the right-of-way and otherwise damaging plaintiff's property over and beyond the right-of-way aforesaid; and at no time trimming said pine limbs, poles or logs according to the contract that had been made; but utterly disregarding the terms thereof and slaughtering his said timber and cutting it to suit its own purposes and conveniences, and rendering the same wholly worthless to plaintiff as logs or poles." Also: That "the whole thing was a fraudulent scheme on the part of the defendant, its agents and representatives, to get the right-of-way and not to carry

out the contract to cut and remove the timber and poles to the edge of the right-of-way and to trim and remove the pine limbs as agreed"; but in pursuance of its fraudulent scheme, it entered upon the right-of-way by reason of the right granted it under the deed of conveyance and committed the said acts of fraud.

The defendant admitted that "it purchased a right-of-way two hundred feet in width across plaintiff's land as set forth in the complaint, for the construction of its power lines, and that a written deed of conveyance thereof was executed and delivered by the plaintiff to the defendant conveying unto it the said right-of-way," and containing the provision quoted therefrom in the complaint; and that the company's "agents and employees entered upon said right-of-way and cut and piled the said wood and timber thereon as stipulated in the said deed of conveyance," but denied that in doing so it acted in a wanton or reckless manner or with a wrongful intention to injure or damage the rights of the plaintiff in any way.

When the case was called for trial, and before the jury was drawn, counsel for the defendant, taking the position that the complaint stated at least two causes of action, one for breach of contract and the other in tort, moved that the plaintiff be required to elect on which he would proceed. Opposing counsel thought that the complaint stated only a cause of action for tort arising out of a breach of contract —in the manner in which the defendant performed its contract, and said that they did not claim it was anything else. The case then proceeded to trial on the understanding that the action was one in tort. Much of the testimony offered by the plaintiff was ruled inadmissible by the Court, and at its close the defendant's motion for a nonsuit was granted on the ground, as we understand it, that the evidence did not establish the claim for damages as sued for.

There are nine exceptions, but counsel for the appellant have reduced the questions raised by them to three, stating

that only this number of issues seem to run through the case. As stated and argued, these questions are as follows:

"(1) Did the Court err in refusing to receive testimony responsive to the allegations of the complaint, when the complaint clearly defined the rights of the parties and showed that there was a tortious breach of duty to the appellant, as defined by the contract?

"(2) Did the Court err in holding that the complaint stated no cause of action for a tort growing out of the manner in which the respondent performed its duty to the appellant under the law of the State as defined by the contract fixing the rights between the parties?

"(3). Did the Court err in excluding testimony going to show the special value of the timber and the negotiations leading up to the execution of the deed when that testimony was responsive to the allegations contained in the complaint?"

In beginning their discussion of the issues presented by the appeal, counsel make this statement of their understanding of the law applicable in cases of this kind: "It will not be disputed that under the decisions of this State, one who possesses the authority from the State as respondent did may have such right-of-way over the premises of its citizens as is necessary to carry on its business; and that where the purchase price cannot be agreed upon, the condemnation machinery provided by law is exclusive to obtain that right. *Rankin v. Sievern & Knoxville R. Co.*, 58 S. C., 532, 36 S. E., 997, 1001. It is also conceded that everything necessary to operate the business of the respondent must be paid for in that proceeding. It is also conceded that where a complaint is claiming for something embraced in the right-of-way, or reasonably incidental thereto, that complaint has no standing in Court, for the condemnation proceeding covered that; and if there has not been condemnation proceeding, that remedy must be restored to in order to recover therefor, as that remedy is exclusive, where there is license to enter."

But, "according to our view of the case, it matters not whether the right-of-way was defined by the judgment of a condemnation Court or whether it was defined by a deed. When it was once defined, it was defined for all time and the owner of the land was paid for all that the reasonable use of that right-of-way could damage him; but if in the performance of its duties, and in the doing of its work on that right-of-way, it should be guilty of negligence, fraud or malice or recklessness to the damage of the owner of rights not reasonably necessary to the enjoyment of its franchise, that becomes a matter for trial by jury, in a law action."

In the *Rankin case* above referred to, it does not appear that there had been any condemnation or grant of a right-of-way to the railroad company; and as there was no allegation that the defendant entered the premises without the consent of the plaintiff the Court held that the complaint was fatally defective for that reason, and was demurrable. But it was also stated that, "as the route of the railroad was very near plaintiff's dwelling, she must have had knowledge of the first entry for construction and having made no objection thereto in the manner required by statute, her consent would be presumed, and her only remedy would be for compensation under the condemnation statutes." Counsel for appellant argue that this case, for these reasons, is altogether inapplicable to the principle involved in the case at bar.

*Granger v. Postal Telegraph Co.*, 70 S. C., 528, 50 S. E., 193, 106 Am. St. Rep., 750, is in some respects like the case at bar. It there appears that a tract of land was owned by three persons as tenants in common and that one of them, Mary Granger, executed an instrument in writing, granting the defendant company "the right to construct and maintain its lines of telegraph, including necessary poles and fixtures, over the property which I own or in which I have any interest in the County of Pickens, State of South Carolina, and along the roads, streets and highways adjoining said property, with the right to remove all trees necessary for the

proper erection and maintenance of said lines or poles and to trim all trees necessary to keep the wires cleared at least twenty feet, to set necessary guy and brace poles, and to attach to the trees necessary guy wires. Damages to crops and timber are to be paid for at market value."

In hauling the required number of poles from the public highway, the employees of the defendant used a road leading to the plaintiff's dwelling as far as it extended and then went across her open lands to the claimed right-of-way, which she forbade the defendant to do. This hauling was done in early spring when the ground was very wet, and as a result the wagon wheels cut deep into the soil and did damage thereto. Also: "A part of this strip of land was woodland, and defendant cut a space through for its line about 30 feet wide." The complaint alleged: "That the defendant, its agents and employés, has heretofore trespassed, and is at the time of filing this summons, trespassing upon the lands of the plaintiff, by going upon the lands cutting timber, wrongfully driving its wagons across tillable lands of the plaintiff, where it has no right so to do, and thereby breaking down terraces, and causing the lands to wash and otherwise injuring the lands of the plaintiff, in violation of repeated warnings and objections from the plaintiff or her agent, whereby the plaintiff's lands, both forest lands and lands in cultivation, have been injured to the damage of the plaintiff in the sum of three hundred ($300) dollars."

Upon trial of the case, a nonsuit was granted, and on appeal this Court said: "The action in this case was not upon the contract contained in the instrument granting the right of way, for damages to crops and timber at market value, as stipulated for therein, but was for damages for trespass," as shown by the allegation of the complaint above quoted. And that: "Mary Granger, as tenant in common, had the right to grant permission to defendant company to construct and maintain its telegraph lines through the property; and, especially as this was done with the knowledge and consent

of plaintiff, there is no foundation for an action of trespass by reason of such construction, unless defendant had committed a trespass by doing something not properly incident to the exercise of the right granted, or in injuriously exercising the right in a negligent or wanton manner." Also: "The defendant having entered for the construction of its line with the permission of plaintiff, her only remedy for damages incident to such entry and construction would be under the condemnation statutes (*Rankin v. Railroad, supra*), unless the plaintiff should connect herself with the contract made with her co-tenant, in which case her remedy would be under the contract."

In *Leitzsey v. Water-Power Co.*, 47 S. C., 464, 25 S. E., 744, 34 L. R. A., 215, the Court quoted with approval the following from *Watts v. Railway Company*, 39 W. Va., 196, 19 S. E., 521, 523, 23 L. R. A., 674, 45 Am. St. Rep., 894: "Neither a right of way conferred by grant nor one conferred by condemnation will give exemption from damages consequential upon the improper or negligent exercise of the rights, and not from the fair, proper, and reasonable exercise of it, for the reason that neither in making such grant nor in the assessment upon an inquisition are damages contemplated or included that are to be solely attributed to such misuse of the right." It was held, however, in the *Leitzsey case,* that as the complaint did not contain any allegation of injury resulting from negligence in the performance of the acts permitted by the statute to incorporate the board of trustees of the Columbia canal, etc., it was demurrable on that point.

In *Nunnamaker v. Water-Power Co.*, 47 S. C., 485, 25 S. E., 751, 34 L. R. A., 222, 58 Am. St. Rep., 905, it was held that property purchased where it might have been condemned, the consideration is conclusively presumed to cover all damages to the remainder of the tract for which the owner could have obtained compensation in a condemnation proceeding. It was also pointed out that where the railroad

company acquired a right-of-way by agreement with the landowner damages are recoverable if alleged and shown that they were the result of the unskillful and negligent manner in which the work of the construction and maintenance of the roadbed was done.

So, in *Sims v. Railway Company,* 56 S. C., 30, 33 S. E., 746, 748, it was held that an action for damages will lie for the negligent performance of lawful work. The Court said: "A railway company organized under the laws of this state has the right to take lands for public purposes, to wit, for the erection of its roadbed; and that right is not exhausted, as matter of law, by the first taking. If it does so take lands, the owner's remedy is other than by suit of this character. It can so take lands without written notice to a landowner, and with the owner's implied permission. But the allegation of the complaint goes a step further, and charges negligent construction by defendant. A railway company may acquire the legal right to construct a road over the lands of another, but it must be built with ordinary care, without negligence. If damage result from such negligent act on the doing of lawful work, the company must respond, and, in a suit like this, whether an act is negligent is a question of fact." See, generally, *Wallace v. Railroad Company,* 34 S. C., 62, 12 S. E., 815; *Glover v. Remley,* 62 S. C., 52, 39 S. E., 780; *Matheny and Harrigal v. City of Aiken,* 68 S. C., 163, 47 S. E., 56; *Johnson v. Southern Railway,* 71 S. C., 241, 50 S. E., 775, 110 Am. St. Rep., 572; *Parish v. Town of Yorkville,* 96 S. C., 24, 79 S. E., 635, L. R. A., 1915-A, 282; *Lockhart Power Company v. Askew,* 110 S. C., 449, 96 S. E., 685.

Keeping in mind the principles of law applicable to the case before us, we will now consider the questions presented for decision. The contention of the appellant, as stated in his printed argument, is this: "That where a deed conveys a right-of-way the provisions and limitations in that deed have the same force and effect as a statute fixing the rights

of the partes would have. What the law can do the parties can. voluntarily do for themselves. Hence, when we alleged the provisions of the deed as the basis of our action and for the purpose of showing what property belonged to us and what property belonged to the respondent, we most respectfully submit, that it was entirely proper to maintain the action as one of tort growing out of the improper manner in which the duties imposed by the deed were performed."

A reading of the deed or contract introduced in evidence discloses that the appellant granted to the power company, for the consideration of $1.00 and other valuable consideration, the right to construct its electric transmission lines, etc., over a strip of land two hundred feet in width, a part of a tract described, "including the right of ingress and egress to and from said strip and the right to cut and keep clear all trees and undergrowth and other obstruction on said strip." It also provided, as alleged, that all timber cut on this strip of land should remain the property of the grantor, and that the power company should cut and trim up such timber and place the logs or poles near the edges of the strip and trim and pile the pine limbs so that they could be used for wood.

This condition of the deed—an agreement between plaintiff and the company that the latter should do certain things in its clearing of the right-of-way with regard to the timber thereon—clearly created thereabout a contractual relation between the parties; and if the power company, in the exercise of the right granted it to construct its electric transmission lines, etc., over the strip of land described, violated or breached such condition or agreement in any manner, then the remedy of the plaintiff was under the contract itself. See *Rankin v. Railroad Company, supra; Granger v. Postal Telegraph Company, supra.* Of course, as held in the *Granger case,* should a grantee commit a trespass by doing something not properly incident to the exercise of the right granted, or exercised the right in a negligent or

wanton manner, an action in tort for damages resulting to the grantor therefrom would lie.

In the case at bar, the complaint states two causes of action, one on contract and the other in tort. As the action was tried as one in tort, the presiding Judge properly ruled inadmissible all evidence tendered by the plaintiff to prove the breach of the contract as alleged by him. While competent testimony was admissible, of course, to establish the allegations of the cause of action for trespass, one in tort, we do not find, from an examination of the evidence, proof of any damages suffered by plaintiff by reason of the alleged trespass. The trial Judge, therefore, properly granted the motion for a nonsuit.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.