## UNITED STATES v. 83.94 ACRES OF LAND, NEWPORT COUNTY, R. I., et al.

### Misc. No. 117.

District Court, D. Rhode Island.

May 17, 1946.

George F. Troy, U. S. Atty., of Providence, R. I., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Frank A. Michels, Sp. Assts. to Atty. Gen., for the Government.

Jerome Beaudrias, of Yonkers, N. Y. (I. J. Beaudrias, of Yonkers, N. Y., of counsel), for Bettie H. Smythe.

HARTIGAN, District Judge.

This matter was heard on a petition for distribution of funds deposited in the registry of the court and presents the question for decision whether the United States, in a condemnation proceeding wherein it is the condemnor, is entitled to have a federal estate tax liability (as a lien upon the land condemned) satisfied from the award which the United States deposited in the registry of the court for distribution.

September 30, 1941, the United States of America, pursuant to a request of the

Acting Secretary of the Navy, filed a petition for condemnation of certain lands set forth therein and a declaration of taking and the sum of $60,002 estimated by the Acting Secretary of the Navy to be just compensation for all of said lands was deposited in the registry of the court for the use and benefit of all persons entitled thereto and an order and judgment on the declaration of taking was entered vesting title to the said lands in fee simple absolute in the United States. 46 Stat. 1421, 40 U.S.C.A. § 258a.

Schedule A attached to the declaration of taking is as follows:

### Schedule "A"

The names and addresses of the persons having title to or other interest in the lands described in the within declaration of taking, and the amounts estimated to be fair compensation for each respective ownership including all improvements thereon, are as follows:

| Name and Address | Parcel Number | Acres | Estimated Fair Compensation |
| --- | --- | --- | --- |
| Bettie H. Smythe, Hileary Holt Farms, Raccon Ford, Virginia | A B | 80.90 | $60,000.00 |
| New York, New Haven and Hartford Railroad Company | C | 3.04 | 1.00 |
| Henry I. Chase, Newport Rhode Island | For all right, title and interest in and to the lands described in the attached declaration of taking | | 1.00 |
| Total | | 83.94 | $60,002.00 |

March 14, 1942, Bettie H. Smythe filed a petition for payment to her on account of just compensation. She alleges (8) that the abstract of title to the lands described in said declaration of taking indicates that there are various minor liens, easements, or other interests in said land outstanding as encumbrances on the record title to said lands which remain to be released or otherwise disposed of before final judgment may be entered for the payment of the entire sum due her as just compensation for the taking of her said parcels of land and improvements; and that the disposition of said encumbrances will require delay and, therefore, a long period of time will elapse before the full amount of compensation to which she is entitled may be ordered paid. The petition prays for the distribution of $40,000 out of the sum of $60,-001 now on deposit in the registry of the court as the amount estimated to be due to her. (The correct amount shown in schedule A is $60,000.)

March 16, 1942, an interlocutory judgment was entered which contained the following:

"It is, therefore, considered by the Court and it is the order, judgment and decree of the Court

"(a) That the defendant, Bettie H. Smythe, is the only person in title and interest entitled to said sum of $60,001. now on deposit in the Registry of this Court as the sum estimated by the petitioner to be just compensation for the taking of the land described in paragraph 'Third' of this judgment.

"(b) That under the provisions of an Act of Congress approved February 26, 1931, 46 Stat. 1421, U.S.C.A. Title 40, Sec. 258a said defendant, Bettie H. Smythe, is entitled to receive the sum of $40,000. forthwith on account of the just compensation to be awarded to her in this proceed-

ing in respect to the aforesaid parcel of land with improvements, without prejudice to her right to establish and receive such amount in excess thereof as may be awarded to her as just compensation for said taking.

"(c) That the Clerk of this Court is hereby ordered and directed to pay forthwith said sum of $40,000. from and out of the money deposited in this cause in the Registry of this Court on September 30, 1941, by James Forrestal, Acting Secretary of the Navy, acting for and in the capacity of the Secretary of the Navy of the United States, to the use of the persons in title and interest entitled thereto, said payment to be made for and in behalf of said defendant, Bettie H. Smythe, and distributed in the following manner but without prejudice to the right of said Bettie H. Smythe to establish and receive such amount in excess thereof as may be awarded to her as just compensation for said taking: to Aquidneck National Bank of Newport, the sum of $18,815.07; to Burdick, Corcoran & Peckham, as attorneys for the heirs or devisees or assignees of Robert S. Chase, the sum of $1,625.00; and to J. Russell Haire as attorney for the petitioner, Bettie H. Smythe, the sum of $19,559.93: constituting in all the sum of $40,000; all checks for said three distributive sums to be made payable as aforesaid and delivered to said J. Russell Haire as attorney for the petitioner."

(Said check for $1,625 was subsequently returned and credited to the account of Bettie H. Smythe in the registry of the court by an order entered April 2, 1945.)

November 2, 1944, the United States filed a motion to amend its petition for condemnation by adding to paragraph 4 the following sentence: "That Bettie H. Smythe, the apparent and presumptive owner of the lands described herein, executed and delivered an option to your petitioner to convey said lands to the United States at the prices stated therein, which said option was duly exercised and accepted by the United States." November 6th an order allowing said amendment was entered.

November 22, 1944, the government filed a motion for entry of judgment alleging that Bettie H. Smythe for a consideration paid by the United States executed an option (modified by an attached rider not material here) dated August 25, 1941, in which she agreed to sell and convey to the government for the consideration of $60,000 the land in question and that said option was accepted by the government on September 12, 1941. May 7, 1945, this motion was discontinued.

The option contains the following provisions:

"The undersigned hereby grants to the government the right of immediate occupancy and use of the land for any purpose whatsoever from and after the acceptance by the government of this option, which acceptance shall be within thirty (30) days after the date hereof, until such time as said land is conveyed to the government by the undersigned, the title approved by the Attorney General of the United States as required by law and the agreed purchase price paid by the government to the undersigned.

"The undersigned further agrees that she will execute and deliver a warranty deed conveying the fee simple title to the above described land to the United States of America and shall cause to be executed and delivered all abstracts or certificates of title, plats, maps, official certifications, affidavits, evidences of title, deeds of conveyance, etc. necessary in the opinion of the Attorney General, to convey to the United States of America a valid and satisfactory title to said land clear of all mineral rights, easements, restrictions, leases, judgments, taxes and assessments, existing or inchoate, liens, or encumbrances of any sort, at the date of the transfer of the title to the United States.

"Upon final approval of the title to the property by the Attorney General, the agreed purchase price above mentioned will be paid by the government to the undersigned.

"It is further agreed that in the event the government determines to acquire the title to said lands under the power of

eminent domain by condemnation proceedings, then the compensation to be claimed by the undersigned for said land and the award to be made to the undersigned therefore in said condemnation proceedings shall be the amount of the purchase price herein agreed upon, and it is specifically agreed that this agreement shall be filed in said condemnation proceedings as a stipulation fixing the compensation between said parties for said land."

March 8, 1945, the government filed a petition for disbursement of the funds in the registry of the court and an order was entered giving notice of said petition to said Bettie H. Smythe, Joseph D. Nunan, Jr., Commissioner of Internal Revenue, Treasury Department, Washington, D. C., and to the Collector of Internal Revenue for the Fourteenth District of the State of New York, of a hearing on said petition to be held on April 2, 1945.

April 19, 1945, the parties entered into a stipulation which states in part:

"Whereas the undersigned defendants are owners of or have an interest in the lands condemned, described in the Declaration of Taking as Parcels Nos. A. and B., or however described and identified, and under the provisions of the Declaration of Taking Act (46 Stat. 1421) the title to the above-described land in fee simple absolute was vested in the United States of America and the right of just compensation for the same was likewise under the provisions of said act vested in the persons entitled thereto.

"Now, therefore, the undersigned defendants being all the persons in title entitled to said compensation do hereby stipulate and agree that the sum of Sixty-Two Thousand, Five Hundred Dollars ($62,500.), inclusive of interest, shall be in full satisfaction of and just compensation for the taking of the unencumbered fee simple title to the above-described land, and

"It is further stipulated and agreed by and between the parties hereto that the said sum of Sixty Two Thousand, Five Hundred Dollars ($62,500) shall be subject to all liens, encumbrances and charges of whatsoever nature existing at the present time other than the easement across said property known as 'Chase easement' and that any and all awards of just compensation ascertained and awarded in this proceeding and established by judgment herein to any and all parties now or subsequently named as defendants herein shall be payable and deductible from the said sum, and * * *.

"It is stipulated and agreed by and between the parties to the foregoing stipulation that it is the intent and meaning of the correction appearing in line ten of page two herein that the sum of $62,500. shall be paid to the persons in title entitled thereto as the interests of said persons appeared at the time of the said taking of the said land as determined by this Court and nothing herein shall be construed as an admission on the part of Bettie H. Smythe as to any personal liability for any outstanding taxes due the United States of America."

April 19, 1945, Bettie H. Griswold, formerly known as Bettie H. Smythe, filed a second application for disbursement of funds estimated as just compensation and states: "(2) That there are no liens, encumbrances or charges upon said real estate, except as follows: Lien claimed by the United States Internal Revenue Department, which is less than the amount remaining in court after the withdrawal requested herein by Bettie H. Smythe now known as Bettie H. Griswold."

In her second application she prays the order of the court directing the disbursement of the funds to her from the registry of the court in the sum of $7,475 without prejudice as to her rights as provided for in 40 U.S.C.A. § 258a and on the same date an order which was assented to by the government was entered directing the clerk to disburse said sum of $7,475 to her, the sum of $38,375.00 having been previously withdrawn.

The Commissioner of Internal Revenue filed an answer May 17, 1945, to the petition for distribution filed March 8, 1945, in which he alleges that Frederick W. Smythe died testate on April 14, 1938, at Yonkers, Westchester County, New York, and that the defendant, Bettie H. Smythe, became the executrix of his estate; and

that when said decedent died he was the owner and in possession of all the real estate that has been taken for public use pursuant to the order of this court in this proceeding; that on August 8, 1939, said Commissioner made an assessment of the federal estate taxes of the estate of Frederick W. Smythe of the amount of $34,206.-98, and out of the assessment there remains an unpaid balance of the full amount of $13,093.91, together with interest.

The Commissioner of Internal Revenue prays that this court hold the United States had a first and superior lien on said real estate on and after the date of death of said Frederick W. Smythe for the amount of said estate taxes; and that the United States have the unpaid balance of said taxes satisfied out of the condemnation award deposited with the Registry of this Court.

The defendant opposes the lien for the tax and contends (1) that there was a merger of the lien of the United States when it acquired the title in fee, (2) that Bettie H. Smythe was the bona fide purchaser for value and is entitled to the application of the rule for marshalling of assets and (3) that she has a complete defense in equity and is entitled to invoke the equitable powers of the court.

When Frederick W. Smythe died he was the owner of the land condemned. This land was subsequently acquired by Bettie H. Smythe through an order of sale by the Surrogate Court. She in her personal capacity gave a mortgage of the land to herself, in her fiduciary capacity, to secure payment to the estate of the balance of the purchase price. This mortgage was dated October 13, 1939, and was recorded on October 16, 1939, in the Lands Records of the Town of Middletown, Rhode Island.

The tax liability is that of the estate of Frederick W. Smythe and the attorney for Bettie H. Smythe has admitted it to be in the amount of $15,644.29 as of April 16, 1945 if the court should decide in favor of the government.

The statute involved is § 827 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev. Code, § 827.

Lien for tax

"(a) Upon gross estate. Unless the tax is sooner paid in full, it shall be a lien for ten years upon the gross estate of the decedent, except that such part of the gross estate as is used for the payment of charges against the estate and expenses of its administration, allowed by any court having jurisdiction thereof, shall be divested of such lien. If the Commissioner is satisfied that the tax liability of an estate has been fully discharged or provided for, he may, under regulations prescribed by him with the approval of the Secretary, issue his certificate, releasing any or all property of such estate from the lien herein imposed."

In Detroit Bank v. United States, 317 U.S. 329, 332, 335, 63 S.Ct. 297, 298, 87 L.Ed. 304, the court said in reference to said § 827:

"The lien attaches at the date of the decedent's death, since the gross estate is determined as of that date and the estate tax itself becomes an obligation of the estate at that time without assessment. See Hertz v. Woodman, 218 U.S. 205, 220, 30 S.Ct. 621, 625, 54 L.Ed. 1001; Ithaca Trust Co. v. United States, 279 U.S. 151, 155, 49 S.Ct. 291, 73 L.Ed. 647; United States v. Ayer, 1 Cir., 12 F.2d 194; Rosenberg v. McLaughlin, 9 Cir., 66 F.2d 271. That the lien attaches at the decedent's death without necessity for assessment or demand is implicit in the proviso that such part of the estate as is used for payment of charges against the estate and expenses of administration shall be 'divested of the lien.'

\* \* \* \* \* \*

"Under § 315(a), (26 U.S.C.A. Int.Rev. Code, § 827), as has been stated, the lien arises on the death of the decedent and becomes effective against purchasers and mortgagees without assessment or demand and obviously before it would be possible to record a notice of lien under the provisions of R.S. § 3186 [26 U.S.C.A. Int.Rev. Code, §§ 3670–3677]."

See also State of Michigan v. United States, 317 U.S. 338, 63 S.Ct. 302, 87 L.Ed. 312.

In Metropolitan Life Ins. Co. v. United States, 6 Cir., 107 F.2d 311, 313, certiorari denied 310 U.S. 630, 60 S.Ct. 978, 84 L.Ed. 1400, the court said:

" * * * The Federal statutes create specific liens for taxes and as a corollary give a specific remedy for their removal and when such liens once attach, they may be lifted only as provided thereunder."

In People of Puerto Rico v. United States, 1 Cir., 131 F.2d 151, 152, the court said:

"By force of the statute, 40 U.S.C.A. § 258a, the money deposited in court by the United States Government at the time when it takes title under condemnation proceedings stands in the place of the land which has been taken and from it the claims of lienholders may be satisfied. This applies to tax liens as well as to liens of other kinds but only to existing liens, not to potential ones. City of St. Louis v. Dyer, 8 Cir., 56 F.2d 842; Drake v. City of St. Paul, 8 Cir., 65 F.2d 119. * * *"

In United States v. Certain Land in City of St. Louis, Mo., D.C., 29 F.Supp. 92, 94, the court said:

" * * * It seems to be conceded, as well it might, that the fund on deposit in the Registry of the Court stands in the place of the real estate condemned and is subject to the claim of all lienholders for the payment of the amount of their lien which had attached to the real estate at the time of the appropriation of the property by the Government. * * *"

In South Carolina Public Serv. A. v. 11,754.8 Acres of Land, Etc., 4 Cir., 123 F.2d 738, 741, 742, the court said:

"The taxes were a lien on the land at the time of the verdict, and the verdict fixed the value of the land regardless of liens. The verdict in no sense included any adjustment of the liens. That was a matter for the court when the fund in its hands was distributed. It could not be contended that a mortgage given by the owner of land sought to be condemned was in any way included or settled by the verdict of a jury fixing the value of the land. The tax lien was at least of equal

dignity as a mortgage lien and was in no way affected by the verdict.

"It is contended by the appellees that the question of payment of the taxes was never brought to the attention of the jury and that if it had been the award of the jury would have been larger. We do not agree with this contention. The jury under proper instructions fixed the value of the land without reference to any liens that might be against it. The defendants in the condemnation suit could have had this question brought to the jury's attention had they asked the trial judge for instructions on that point. It is well settled that an award of compensation is conclusive as to every matter which could have been included therein, whether or not it was in fact included. Lockhart Power Co. v. Askew, 110 S.C. 449, 96 S.E. 685; Watts v. Norfolk & W. R. Company, 39 W.Va. 196, 19 S.E. 521, 23 L.R.A. 674, 45 Am.St.Rep. 894. * * * * * *

"The taxes in question were a lien on the fund in the hands of the court and were, upon the distribution, properly payable out of it."

In Coggeshall v. United States, 4 Cir., 95 F.2d 986, 989, 990, the court said:

" * * * As was said by the Supreme Court in United States v. Kirkpatrick, 9 Wheat. 720, 735, 6 L.Ed. 199: 'The general principle is, that laches is not imputable to the government; and this maxim is founded, not in the notion of extraordinary prerogative, but upon a great public policy. The government can transact its business only through its agents; and its fiscal operations are so various, and its agencies so numerous and scattered, that the utmost vigilance would not save the public from the most serious losses, if the doctrine of laches can be applied to its transactions.' "

In United States v. 25,936 Acres of Land, Etc., 3 Cir., 153 F.2d 277, 279, the court said:

"A condemnation proceeding is a proceeding in rem. It is not a taking of rights of persons in the ordinary sense but an appropriation of the land or property itself. As indicated by the Supreme Court in Duckett & Co. v. United States, 266

U.S. 149, 151, 45 S.Ct. 38, 69 L.Ed. 216, all previous existing estates or interests in the land are obliterated. An unqualified appropriation in fee simple by the United States under the Act, cited supra, creates a new title. The condemnation award when made stands in the place of the land and the rights of all persons may be treated as though transferred to the award. United States v. Dunnington, 146 U.S. 338, 351, 13 S.Ct. 79, 36 L.Ed. 996; United States v. Certain Lands in Borough of Brooklyn, 2 Cir., 129 F.2d 577, 579. Valid tax liens must be satisfied from the award. * * *"

In her brief, the defendant states the land was sold to her on November 16, 1939, for $36,250 of which sum $20,000 was paid to the government on account of the transfer tax then due. The present attorney for Bettie H. Smythe admits that another attorney who represented her at the time she bought the property failed to obtain from the Collector of Internal Revenue a release of the federal gross estate tax lien.

Prior to the condemnation, the government had a lien for tax upon the gross estate of Frederick W. Smythe by virtue of the provisions of said § 827 which was in force at the time of his death. The record discloses that the defendant had full knowledge of the lien for tax when she purchased the property.

In view of the above cited authorities, I am of the opinion that the government by condemning the land and substituting its value, namely, $60,000, did not deprive the government of its lien, especially when there is nothing in the record that warrants me in finding that the government released the tax liability.

It is my opinion, therefore, that the United States has a first and superior lien on said Parcels A and B on and after the death of said Frederick W. Smythe for the amount of said estate taxes and is entitled to have the unpaid balance of said taxes satisfied out of the condemnation award deposited in the registry of the court and that the defendant is entitled to the balance of said condemnation award.

Judgment may be entered accordingly.